# SUPREME COURT

OF THE

## STATE OF COLORADO.

September Term, 1908

[No. 6239.]

### VAN WYK v. THE PEOPLE.

1. **Criminal Law—Evidence—Relevancy** — In an indictment against husband and wife for murder, it being shown that the deceased, a sister of the wife, had, shortly before her death, insured her life for the benefit of the wife, and that defendants had obligated themselves for the premium, evidence that defendants were in straightened circumstances is relevant.—(6)

So, also, evidence that the deceased did not understand English, that the wife made the answers for her at the time of the application for the insurance, and that they were false.—(8, 9)

So, also, it being shown that the wife had, on the day that the remains were found, stated that she had tried the door of the dugout where they were found, and was unable to enter, evidence that she had lived in the house and knew how to open the door.—(6)

So, also, evidence as to what could be seen through the window of the dugout, and contradiction of statements made by the wife as to this matter.—(6)

So, also, suicide being suggested and a paper evidencing this being found with the remains, which .were frozen when discovered, and a bottle of ink upon a table near the bed upon which the body was found, evidence as to the temperature at a station of the weather bureau twenty miles from the dugout is admissible to support the contention of the State that defendants had themselves fabricated the writing and placed the body where it was found.—(7)

So, also, evidence of an expert chemist as to experiments made by him with the ink found in a bottle, which, with reasonable certainty was identified as the one found in the dugout, though the testimony showed opportunity to designing persons to tamper with ink prior to such experiments.—(9-10)

So, also, evidence of expressions of· ill-will by defendants toward the deceased, and a desire to get rid of her.—(9)

2. **Evidence Admitted Provisionally**—Where evidence for the prosecution is admitted on condition that it shall be rejected if its relevancy is not made apparent by other testimony, error cannot be assigned thereon unless, at the close of the prosecutor's case, motion is made by the accused to reject it.—(7)

3. **Evidence—Hypothetical Question**—There is no error in allowing a question which assumes a condition of which there is some evidence, and to which the witness answers that if this condition did not exist his opinion would be modified.—(8)

4. **Evidence—Relevancy**—Where two are indicted jointly for homicide, the conspiracy to commit the crime may be proven though not expressly charged.—(11)

5. **Writ of Error — Brief — The** court will not search the record to find whether questions excluded on cross-examination were directed to matter within the examination in chief. Counsel must specifically point out the error.—(8)

6. **Instructions—Homicide—An** instruction that "if the jury find, from the evidence, beyond a reasonable doubt," that the deceased was killed, and that either of the defendants participated in the homicide, the jury should find such one guilty, does not assume that either of the indicted parties murdered the deceased, nor that the death was not the result of accident or suicide.—(12)

The court is not to instruct as to a theory of the death, which there is no evidence to support. The case of Crawford v. The People, 12 Colo. 290, distinguished.—(18)

7. **Instructions — Reasonable Doubt — An** instruction which properly defines a reasonable doubt will not be declared fatal error for a declaration that the jury are "not to go beyond the

evidence to hunt for doubts." The court thought the instruction unduly favorable to the accused as implying that they might search for doubts, within the evidence, whereas the duty of the jury is to search, not for doubts, but for the truth.—(14)

The court recommends the adoption by the courts of first instance of the instruction as to reasonable doubts which was approved in Minich's case, 8 Colo. 440.—(15)

8. Instructions—Harmless Error—An instruction erroneous only as to a defendant who is acquitted, does not avail the one convicted.——(13)

An instruction substantially identical in phraseology with one prayed by the accused cannot be assigned for error.—(15)

An instruction that, if one of two indicted jointly was present at the perpetration of the crime and the other was not, the jury should acquit as to the absent defendant, if no conspiracy between them appeared, but should convict as to the other, is not error for failing to require evidence of participation by the one present, where, by other parts of the charge, the law as to this was fully and fairly set forth.—(16)

The court instructed that the testimony of the accused, at their preliminary examination, was admitted "for the purpose of proving their confession or admission." Held, no error where it was left to the jury to determine what weight should be accorded to these papers.—(17)

9. Bills of Exceptions—What Must Be Set Out—The refusal of the court to direct the jury to disregard certain remarks of counsel for the prosecution, in the closing argument, expressly upon the ground that they contain a just reply to what was said by counsel for the accused, will not be reviewed where the remarks so attributed to the prisoner's counsel are not set out.—(19)

10. Criminal Law—Circumstantial Evidence—Circumstances held sufficient to convict of the crime of murder.—(17-23)

*Error to Logan District Court*—Hon. H. P. BURKE, Judge.

Mr. ISAAC PELTON, Mr. R. D. REES, and Messrs. MUNSON & MUNSON, for plaintiff in error.

Hon. WM. H. DICKSON, attorney general, Mr. S. H. THOMPSON and Mr. RALPH TALBOT, for the people.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The information is in three counts and charges in the first the plaintiff in error and Woutherje Van Wyk jointly with the crime of murder; the second count charges the plaintiff in error as principal and Woutherje Van Wyk as accessory; the third count charges Woutherje Van Wyk, the wife of plaintiff in error, as principal and the plaintiff in error as accessory. The trial resulted in the conviction of plaintiff in error of murder in the first degree and the acquittal of Woutherje Van Wyk.

The case is brought here for review on writ of error, and the plaintiff assigns as grounds for the reversal of the judgment:

First, the insufficiency of the evidence; second, error in the admission and rejection of testimony; third, error in the giving and in the refusing of instructions; fourth, the misconduct of counsel for the people.

On December 31, 1905, the dead body of Gerritje Haast was discovered in her dugout on her homestead in Yuma county. A bullet hole was found in the right side of the head. The bed clothing had been drawn over the body and over the head. The body lay on its left side and the arms were across the breast and under the covers. A revolver was found between the two upper covers of the bed. The body was frozen. On a table was found a bottle of ink, a pen and holder, and, in an empty can, a manuscript written by the deceased, in the following words:

"Have met a fellow at Parker's dam and he has left me there, and now he has been here again and has raped me and abused me. Follow him as soon as you can and bring him to the prison.

"GERRITJE HAAST.

"I do not know his name."

The pistol and the ink bottle were identified as the property of the Van Wyks. There was no direct proof connecting the defendants with the commission of the offense, the state relying wholly upon circumstantial evidence. We shall postpone a consideration of the assignments which relate to the insufficiency of the evidence until after we shall have determined the other questions.

Assignment number 5 relates to the alleged refusal of the court to permit counsel for the defense to lay the foundation for impeachment. The objection to the question upon the ground that it was not proper cross-examination was sustained. Counsel does not show by reference to the transcript that the question was proper upon cross-examination, and we shall presume that the court properly sustained the objection.

Assignments numbers 8, 9 and 10 relate to the alleged error of the court in admitting evidence concerning the property of the defendant Gerrit Van Wyk. The prosecution showed that the defendants had applied for insurance upon the life of Gerritje Haast, and although some of the applications had been rejected, they had succeeded in obtaining policies in the amount of eight thousand dollars, in which Mrs. Van Wyk is named as beneficiary. They had obtained, within a few weeks, policies aggregating $18,000.00, and had obligated themselves to pay premiums amounting to about $800.00. The theory of the prosecution was that the defendants had deliberately planned the murder, and had induced Gerritje Haast to have her life insured for the benefit of Mrs. Van Wyk. It was relevant under that theory to show that the defendants were impecunious and probably not able to pay the premium. This, when coupled with the proof that the death occurred within a month or two after the policies were issued

and that notes were given for a large portion of the first year's premium, tended to establish a motive for the murder, and we are of the opinion that no error was committed in receiving the testimony. The fact that the earning capacity of these people was little in excess of the amount of the premiums on the various insurance policies was a fact the jury was entitled to consider.

Assignment number 14 relates to the testimony of the witness Ball. He was permitted to testify, over the objection of the defendants, that he had rented land of the Van Wyks; that the house in which he lived as a renter from the Van Wyks was taken down and rebuilt upon the Haast homestead, and that the door of the Van Wyk house was used in the house on the Haast homestead. In receiving this testimony the court did not err. On the day the body was found, Mrs. Van Wyk asked Mr. and Mrs. Ball to accompany her to the Haast shack, stating that she had tried the door and could not open it. It was entirely competent to show, as tending to prove the falsity of her statement, that she had lived in the house and knew how to enter.

Assignment number 17 relates to the testimony of witnesses in which they gave the results of experiments at the Haast shack after the body was removed. They placed articles of furniture in the places where they were when the body was found, and then, from the outside, looked through a small window for the purpose of ascertaining just what could be seen. The state, by these witnesses, sought to disprove the statements of Mrs. Van Wyk, and it was, in our opinion, entirely proper.

Assignments numbered 19 to 25 relate to the testimony of the witness Tuomey. It was sought by this witness to show the temperature at Wray, a distance of about twenty miles from the Haast shack. The

witness qualified as an expert. He was a volunteer of the government weather bureau, and kept records of the maximum and minimum temperature at Wray. This testimony was offered in support of the state's theory that the ink in the bottle found on the table in the Haast shack was placed there by the Van Wyks, or one of them, after the murder; also to show the time when Gerritje Haast died. For these purposes we think the testimony was competent. It was not, perhaps, of great value, but its weight was for the jury to determine. At first the court was inclined to exclude it, but upon the statement of counsel that the witness was called out of the regular order, and that other testimony would be offered, the court admitted the testimony. The court having permitted the testimony to be received with the understanding that it would be stricken on motion unless by other testimony its relevancy was shown, it became the duty of counsel for the defendants to move to strike the testimony if the state, at the close of the case, failed to meet the requirements of the court; but our attention is not directed to any such motion. We are not willing, however, to rest the ruling upon the mere omission of counsel. We regard the testimony as relevant and corroborative, and we are of opinion that no error was committed in its reception.

Assignments numbered 26 to 34 have reference to certain rulings of the court in receiving the testimony of the witness Beggs. The witness showed his qualification as an expert and was permitted to answer certain hypothetical questions, and permitted to state when, in his opinion, Gerritje Haast died, and how long, in his opinion, after the shot that killed her was fired, rigor mortis set in; and other matters proper for opinion evidence. It is stated in the brief that the hypothetical question propounded to Dr. Beggs was not based upon the evidence. We shall consider

this objection in so far as it specifically points out in the brief wherein it is alleged that the question is not based upon the evidence. It is said that Dr. Beggs based his opinion as to when the woman died upon the statement contained in the hypothetical question that there was putrefaction in the bowels. There was sufficient testimony upon which to base the hypothetical question, and no prejudice could have resulted to the defendant from the answer, because; upon cross-examination, the witness very particularly stated that if putrefaction was not present his answer would be modified, and that he based his answer upon the assumption that there was putrefaction.

Assignments numbers 37 and 38 allege error in the refusal of the court to permit certain questions to be propounded to the witness Cloyd. It is said that the court unduly limited the defendants' counsel in the cross-examination of this witness. The objection to the question was that it was not proper cross-examination. There is great discretion vested in the trial court in limiting the cross-examination of witnesses; and as counsel has not referred us to testimony of this witness showing where his answers to interrogatories in direct examination warranted the questions propounded on cross-examination, we shall not search the record for the purpose of ascertaining the full scope of his direct examination, and shall assume that the objection was properly sustained.

A witness, an agent of the insurance company, stated that he was present when Mrs. Van Wyk and Gerritje Haast applied for policies of insurance. He was asked to state the conversation between him and Mrs. Van Wyk, and, over objection, he was permitted to state the question propounded and the answer given. As Gerritje Haast could not understand the English language, the answers were given

by Mrs. Van Wyk. The objection to the examination was that the written application was the best evidence, and the overruling of this objection is the ground of assignments numbered 48 to 52. No effort was shown to have been made to produce the written application. The purpose was to show that Mrs. Van Wyk made false statements for the purpose of obtaining a policy on the life of Gerritje Haast. The witness did not undertake to state the contents of a written instrument, but stated a conversation, and we discern no error in the admission of this testimony.

One of the witnesses was permitted to testify, over the objection of the defendants, to acts of ill-treatment by the defendants of Gerritje Haast. It is always proper to show the ill-treatment of the deceased by the accused in a homicide case; to show an antecedent grudge borne by the accused; and anything, in fact, which tends to establish a motive for the homicide. The ruling on this testimony is the basis of assignment number 60. The same objection was made to the testimony of another witness, who stated that Mrs. Van Wyk had said she desired to get rid of her sister, Gerritje Haast.

The witness King, who qualified himself as an expert, was permitted to testify, over objection, that he had made certain experiments with the ink contained in the bottle sent to him at Denver by the clerk of the district court. The objection to this testimony was that the integrity of the ink had not been established; that it was not taken from the shack where it was found until several days after the death of Gerritje Haast; that there was ample opportunity for designing persons to tamper with it. A bottle of ink was found by the witness Ball when he entered the shack on the occasion of being called by Mrs. Van Wyk. That it was the same ink and bottle seen by

him at that time was not shown beyond a reasonable doubt, perhaps, nor was it shown that by no possibility could anyone have changed the ink in the bottle; but there was testimony by which it was sought to establish its identity and its identity was established with such reasonable certainty as to warrant its submission to the jury as an exhibit and to warrant witnesses to testify to the contents of the bottle, and to testify to experiments made with the contents, and to testify to the result of such experiments, the weight of such testimony to be determined by the jury. Admitting the testimony of this witness is made the basis for assignments numbered 71 to 80, and we are of opinion that no error was committed by the court with respect to the admission thereof.

We have not mentioned in this review of the assignments of error relating to the admission and exclusion of testimony all of the assignments based on these grounds. Those we have not mentioned were waived by counsel by not mentioning them in the brief or were not of sufficient importance to warrant a discussion of them, as there was no such transgression of the rules of evidence as to warrant us in reversing the case upon that ground.

Passing to a consideration of the assignments of error which relate to the giving of instructions, we observe that the court, as a cautionary instruction, in closing the charge to the jury, stated that: "These instructions are given by the court as a whole, and they are to be considered by the jury as a whole. No one instruction states all the law of the case, but all of the instructions taken together cover the law which is to govern you in the consideration of this case."

In instructions numbers 7 and 8 the court instructed the jury upon the subject of conspiracy,

and, we assume, correctly; because the correctness of them on the subject is not questioned. But because the defendants were not charged with a conspiracy, counsel contend that it was error to charge upon the subject at all. In this counsel are in error. It is true that the defendants were not charged with having conspired and confederated together to kill and murder, but they were jointly informed against and charged with murder. Under this charge it was entirely proper to show a conspiracy on the part of the defendants to commit the offense, and the acts and declarations of one conspirator in furtherance of the common design were admissible against both the defendants; and the court gave the instruction in order that the jurors should understand that although one of the defendants had no part in the actual commission of the crime, still he should be held as a principal if in fact another defendant had unlawfully taken the life of the deceased in furtherance of a conspiracy and the common design of both defendants. So in this respect the court did not err.

The court gave the following as instruction number 9:

"It is not necessary in order to convict one or both of the defendants that you find that an agreement or combination existed between them to murder Gerritje Haast. The actual participancy of either or both, of the defendants, in the killing of Gerritje Haast, if you should find from the evidence beyond a reasonable doubt that she was killed, and that either or both of them did so participate, will warrant and demand the conviction at your hands of such defendant or defendants so participating, regardless of the question of conspiracy or accessoryship."

It is said that this instruction excludes from the consideration of the jury the felonious killing of the deceased by the defendants, or either of them, and

that the instruction assumes that the deceased did not commit suicide, that the killing was done feloniously and that the deceased was killed and murdered by one of the defendants. The instruction does not assume that the defendants killed and murdered the deceased nor that the killing was done intentionally and not by accident, nor that the deceased did not commit suicide; but if the court had assumed all counsel claims he did except that the defendants, or one of them, killed the deceased, there would have been no error committed, for, if the testimony of the witnesses is to be credited, Gerritje Haast was foully murdered. The court had fully instructed the jury upon the various degrees of murder and grades of manslaughter, although he might well have omitted any mention of the crime of manslaughter. The court was careful to charge that the people were required to prove beyond a reasonable doubt that the deceased was actually murdered, and in view of the other instructions, waiving a consideration of the proposition that the presumption of murder obtains when a killing is proven and no circumstances of mitigation or that justify or excuse the homicide, the words "in manner and form as charged in the information," must be implied from the context, and the jury could not have been misled, because there is no scintilla of evidence upon which to base even a suspicion that the killing was accidental or justifiable.

Instruction number 11 is as follows:

"You are further instructed that if you find from all the evidence that there was no conspiracy between the defendants to murder the deceased, and if you further find beyond a reasonable doubt that one of the defendants murdered the deceased, and that the other defendant had no part therein, you should acquit such defendant not participating in said murder and convict the other."

If both of the defendants had been convicted, the giving of the instruction would probably have caused a reversal of the case, but the jury in acquitting one of the defendants must have found that no conspiracy existed, and must have found beyond a reasonable doubt that the defendant found guilty murdered the deceased. So it does not harm the defendant found guilty, if the instruction is correct as to the convicted defendant, even though it may have required the jury to find beyond a reasonable doubt that the acquitted defendant had no part in the murder.

Instruction number 12 is as follows:

"While you are not to find the defendants, or either of them, guilty, if you entertain a reasonable doubt of guilt, you are, nevertheless, not to search for a doubt. The doubt referred to as reasonable must be such a doubt as would naturally arise in the mind of a reasonable man upon a candid and impartial consideration of all of the evidence in the case. It means a serious, substantial and well-founded doubt and not a mere possibility of a doubt. It is such a doubt as in the more important transactions of life would cause a reasonable and prudent man to hesitate and pause; and when you can say, after considering all the evidence in the case, that you have an abiding conviction of the truth of the charge, then you are in law satisfied beyond a reasonable doubt.

"A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt. You are not to go beyond the evidence to hunt for doubts; you are not at liberty to disbelieve as jurors if, from all the evidence, you believe as men. Your oath imposes no obligation to doubt where no doubt would exist if no oath had been administered."

Particular stress is laid upon the words, "you are not to go beyond the evidence to hunt for doubts."

This is not the equivalent of an instruction that a doubt may not exist from want of evidence, nor the equivalent of saying that the state is not required to remove all reasonable doubt by sufficient evidence; but it is an expression which has crept into the form of instructions frequently used to remove from the minds of the jurors a belief which sometimes exists that proof beyond a reasonable doubt presents an almost insurmountable obstacle for the state to overcome before a conviction can follow. It means nothing more than that the oath imposes no obligation to leave the case and enter the field of conjecture and there hunt for doubts. The court had already instructed the jury that if the evidence, or the lack of it, left in the minds of the jurors any reasonable doubt as to any of the ultimate facts required to be proved, that they must acquit the defendants. The entire instruction should be read with the particular sentence criticised and with the other instructions, and when so read leaves no doubt as to its true intent and meaning.

Moreover, the sentence criticised is more favorable to the defendants than otherwise. It impliedly tells the jury that it may search the evidence for doubts. Such is not the law. A jury is not required to search for doubts either within or without the evidence, and its duty is to search for the truth and not for doubts. If in searching for the truth substantial doubts of the defendant's guilt should arise from the evidence or from the want of evidence, such doubts should prevail in favor of accused, unless upon a fair consideration of all the evidence such doubts disappear.—*Keller v. The People,* 17 Colo. 130.

The jury could not have believed that the state was not required to prove beyond a reasonable doubt the material allegations of the information. How-

ever, we do not commend this instruction as a form to be followed in criminal cases. This court, in the case of *Minich v. The People,* 8 Colo. 440, in a carefully prepared opinion by Mr. Justice Helm, approved an instruction upon the subject of reasonable doubt. The instruction there approved appears to us now to be sufficiently comprehensive, and we suggest that efforts at its modification or enlargement only consume the time of court and counsel, and we again recommend its use without change.

Instruction number 16 is as follows:

"You are instructed that to warrant a conviction upon circumstantial evidence the facts and circumstances proven must be such as are consistent only with the guilt of the party or parties charged, and such as cannot upon any reasonable hypothesis be true and the party or parties charged be innocent. And, if all the facts and circumstances relied upon to secure a conviction can be reasonably accounted for consistently with the innocence of the defendants, or if any single material fact is proved by the evidence to the satisfaction of the jury which is inconsistent with the defendant's guilt, it is your duty to find the defendant or defendants not guilty."

It is insisted that by this instruction the burden of proof is shifted from where the law places it and that the defendant is required to prove to the satisfaction of the jury some fact which is inconsistent with his guilt before he is entitled to an acquittal. If the court erred in the giving of this instruction he was led into the error by the use of practically the same language by the counsel for the defendant in instruction number 9.

Instruction number 18 is as follows:

"You are instructed that what is known in law as an alibi is in part relied on by these defendants. An alibi means that a defendant was elsewhere at

the time the crime is alleged to have been committed. And you are instructed that if all the evidence taken together is sufficient to raise a reasonable doubt in the minds of the jurors whether either of the defendants were present at the time of the commission of the alleged crime, the defense is established; otherwise not.  If, however, you should find from the evidence, beyond a reasonable doubt, that one was present and the other was not, in that event you should acquit the one not present and convict the one present, unless you should further find, beyond a reasonable doubt, that a conspiracy existed between the defendant to commit the crime, in which event you should convict both.''

The closing sentence of this instruction is the only portion criticised by counsel.  They say that the court instructed the jury that it must convict the defendant present at the time of the commission of the crime without regard to whether he was or was not a participant.  In this instruction the court was dealing with the subject of alibi only, and was not undertaking to instruct on the other phases of the case, so that it should be read with the other instructions, and so read it is not objectionable, as claimed by counsel.  It would, of course, be most serious error for the court to instruct the jury that the mere presence at the scene of a crime was sufficient to convict; but when dealing with the subject of alibi alone it is not error to instruct the jury that if after considering all the evidence there is a reasonable doubt as to whether the defendants were or were not present they should acquit, but if one of the defendants was present and the other not, then the defendant not present should be acquitted and the one present should be convicted.  It is not necessary to state in every instruction the phrases which the defendant is entitled to have given concerning reasonable doubt

and the burden of proof and the various ingredients
of the offense, particularly when the court instructs
the jury that no one instruction contains all the law,
but the instructions taken together contain the law
which should govern the jury.   But a more serious
fault with this instruction is found in its ambiguity
concerning the burden of proof.   It seems to place
upon the defendant the burden of proving that he
was not present at the time the crime was committed.
This is the same error that appears in instruction
number 10, and for the same reasons we gave in our
discussion when considering instruction number 10
we hold that the plaintiff in error was not prejudiced
by the giving of this instruction.

In instruction number 21 the jury was told that
a transcript of the testimony taken at the preliminary
examination was admitted as the voluntary state-
ments of the defendants under oath for the purpose
of proving their confession or admissions, if any.
Counsel contend that the use of the word "confes-
sion" in the instruction was prejudicial to the de-
fendant, and that the testimony read did not show
that a confession was made.   There is no merit in
this objection.   The court did not assume that a con-
fession was made, but explained to the jury the
theory upon which the testimony was received and
left it for the jury to determine what weight, if any,
should be given to the testimony.

The court erred, it is said, in declining to give
an instruction upon the subject of suicide.   There
was nothing in the testimony suggesting suicide; in
fact, it appears to us beyond a reasonable doubt that
the deceased could not have taken her own life.   The
position of the arms, the carefully arranged bed-
clothing, the revolver between the covers of the bed,
the character of the wound; in fact, every condition
shown to have existed excluded the possibility of

suicide. But counsel state that under the decision in the case of *Crawford v. The People,* 12 Colo. 290, wherein it is held that, ''however incredible or unreasonable the testimony of the accused may seem, he is entitled to an instruction upon the hypothesis that it may be true,'' the court was required to give the instruction offered. If the defendant in this case had taken the stand and had given his testimony, then, however improbable or unreasonable his testimony may have been, he would have been entitled to have an instruction given, as stated in the Crawford case; but the decision does not declare that every improbable and unreasonable theory of counsel shall be incorporated into the instructions, and that failure to do so is fatal error, nor does such practice prevail in this jurisdiction, and unless there is testimony to support an instruction offered, the court does not err in refusing it. Moreover, the court declared in numerous instructions that the jury, in order to convict, must find beyond a reasonable doubt that Gerritje Haast was murdered. The instructions, on the whole, were fair to the defendant. Not as accurate, perhaps, as they should have been, but there was no prejudicial error committed in giving the charge nor in refusing the instructions offered.

It is urged with much emphasis that the court committed serious error in permitting special counsel for the prosecution to make statements in his closing remarks to the jury concerning the policies of insurance. The portion of the record containing the remarks and the rulings of the court at this stage of the trial discloses that special counsel for the prosecution during his argument asked the attorneys for the defendants if suit had not been commenced by the defendant against the insurance company. At this point counsel for the defendants excepted to

the language and asked that the jury be instructed to disregard the statement. The court then stated: "In view of the argument of Mr. Rees along this line I think the remarks of Mr. Talbot are proper." We shall assume that the ruling of the court was correct. The remarks of counsel for the defendant are not set out in the record, and we cannot say that they did not justify a reply by the prosecution.

The record discloses that Gerritje Haast, an untutored, weak-minded and immoral young woman, about twenty-five years of age, came to this country, from Holland, and reached the home of her sister, one of the defendants, near the town of Wray, in this state, during the month of December, 1903. She was without money and was unable to speak the English language. She was taken in charge by the defendants, and, as one of the witnesses stated, did most of the hard work at their ranch. The country where the defendants reside was sparsely settled. The few neighbors had not seen Gerritje Haast in company with any man but the defendant Van Wyk, and no man is known by them to have visited this young woman. On one occasion Van Wyk was seen with his arms around her waist and on another occasion she was seen sitting in his lap, and about nine months after her arrival at the Van Wyk place she gave birth to her second illegitimate child; the first one was born in Holland. The man Van Wyk struck her with a tamping post and knocked her down, and his justification for the act was that she had spoiled a post-hole. The Van Wyk woman made an assault upon her and she was required to seek the protection of neighbors. She and Van Wyk were frequently seen at different places. She was frequently dressed in man's clothing, and she and Van Wyk, while she was so dressed, were seen together at different places in the vicinity of the Van Wyk house. Mrs. Van

Wyk must have known of the familiarity between her sister and Van Wyk, and Mrs. Van Wyk said to one of the neighbors that she intended to get rid of her. The Van Wyks solicited insurance and secured policies of insurance in various companies aggregating nineteen thousand dollars, eight thousand of which was upon the life of Gerritje Haast, with Mrs. Van Wyk as the beneficiary. One application for ten thousand dollars had been declined because it appeared that although unmarried Gerritje Haast had two children and because it appeared that her mother had died of consumption. After the physician's examination Mrs. Van Wyk asked him as to the examination. The agent told her that the company might reject the application because it appeared that the mother had died of consumption. A few days afterwards Van Wyk and his wife called at the agent's office in Wray and stated that Mrs. Van Wyk had made a mistake in the use of the word "consumption," and asked to have the application changed and gave the agent fifty dollars on account of the premium. Later the defendants procured policies upon the life of Gerritje Haast in other companies, aggregating eight thousand dollars. In the application on which policies were issued the applicant stated that she had no children and that her mother died during childbirth. Mrs. Van Wyk answered all the questions propounded by the physician for the insurance company, as Gerritje Haast was unable to speak or understand the English language. The transaction culminating in the issuance of policies upon the life of Gerritje Haast occurred during the months of July, August and September, 1905. In the year 1904 Gerritje Haast entered as a homestead a piece of land several miles distant from the Van Wyk house. No improvements were made upon this land until November, 1905. It was expected

that Gerritje Haast would be confined some time during the month of January, 1906. In her will, in the English language, dated December, 1905, Gerritje Haast excluded her children and devised her entire property to her sister, Mrs. Van Wyk, and named Van Wyk, her brother-in-law, executor, and directed that he be not required to give bond. In November, 1905, Van Wyk, with one man to assist him, erected a sod shack with but a single room on the land entered by Gerritje Haast as a homestead. He selected an isolated canon as the site. Knowing she was in an advanced state of pregnancy, Mrs. Van Wyk took her to this shack early in December, 1905, and when she, after remaining there a week, walked back to Van Wyk's, Mrs. Van Wyk again took her to the shack on December 27th; and neither Van Wyk nor his wife informed the nearest neighbor, nor any other person, that the young woman had taken up her home on this land. A few days before the young woman was taken to this cheerless home Van Wyk bought several planed boards, and after the dead body was found, Mrs. Van Wyk requested a carpenter to make a coffin, and told him they had the lumber from which it could be made. On the 28th of December, Van Wyk left his home and went to many places distant from the scene of the crime, and it was shown conclusively that he could not have participated in the murder if the woman was killed after the night of December 27th. On the morning of December 31st Mrs. Van Wyk called at the Ball house, about a mile and a half distant from the Haast shack, and asked for her sister, saying that she had tried to enter the shack but that she could not do so. She persuaded Mr. and Mrs. Ball to go to the shack with her. Mrs. Ball experienced no difficulty in opening the door. When Mr. Ball announced that the young woman was dead and that there was a bullet hole in her head, Mrs.

Van Wyk, who was on the outside, asked if there was a revolver. When told by Ball there was no revolver, she asked if there was a note, and she directed his attention to the can in which the manuscript mentioned at another place herein was found. On the table where the can stood was a bottle of ink with a penholder and pen standing in it. Several of the vessels found in the place contained ice, the body of the dead woman was frozen, but the ink in the bottle was not frozen. It was shown that the manuscript was written a month or more before it was found on the 31st of December; it was shown that the young woman died not later than December 27th; it was shown that the door was taken from a house in which the Van Wyks had lived; it was shown that the revolver found after the Balls had first visited the shack on the 31st of December was Van Wyk's; it was shown that the shack was built on the side of a canon and was not visible from any of the very few houses in the vicinity; and from these facts the jury was perfectly justified in finding that Mrs. Van Wyk was simulating ignorance of knowledge of the conditions in the Haast shack when she went there with Mr. and Mrs. Ball on the 31st of December; that the place was prepared by the Van Wyks after they, or one of them, murdered the young woman, in a way to avoid suspicion; that they placed the ink there; that they placed the manuscript in the can. The testimony, although circumstantial, points with unerring certainty to the murder of the young woman by the Van Wyks. There was preparation for this terrible deed by insuring her life for the benefit of Mrs. Van Wyk, to the exclusion of her children; by the making of her will naming Mrs. Van Wyk as the sole legatee, to the exclusion of her children; by the gruesome act of buying lumber suitable for making a coffin; and by taking this poor creature to a place remote from

theirs and leaving her in the dead of winter in a lonely cabin hidden from the view of her only neighbor and in an unfrequented canon where foul murder might be done unseen by human eyes. Motive was shown—a sordid motive, the basest of all motives— the lust of gold. The testimony has convinced us that the jury correctly determined that Gerrit Van Wyk was guilty of the murder of Gerritje Haast, and as no error prejudicial to the accused occurred at the trial, the judgment of conviction is affirmed.

*Affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.