No. 13,607.

HUFFMAN *v.* THE PEOPLE.
(39 P. [2d] 788)

Decided December 17, 1934.

Mr. GEORGE H. BLICKHAHN, Mr. ROMILLY FOOTE, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. CHARLES H. QUEARY, Assistant, for the people.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

AT a jury trial, in the district court of Huerfano county, Colorado, beginning February 19, 1934, Huffman, the plaintiff in error, was convicted on an information charging murder in the first degree, and the jury fixed the penalty at imprisonment for life. He assigns error and will be referred to herein as the defendant.

The defendant and deceased, Lawrence Belloni, resided at Gardner, Colorado, a small hamlet about 30 miles from Walsenburg, the county seat and place of the trial. The defendant supported a wife and three small children as a trapper of coyotes and other wild animals. Sometime in November, 1933, he claims that someone stole a coyote and trap from its setting and that he traced the tracks of a horse through the peculiarity of shape of a horseshoe, from the place where the trap was located to within a short distance of Belloni's home, where he had a conversation with the latter's father. Later on the same

day he met deceased at a blacksmith shop in the town of Gardner, where, after some measurements of the horseshoe tracks of the horse deceased was riding, and the discovery of blood on deceased's shoe, defendant accused him of the theft, and requested him to return the coyote and trap; that after a denial by deceased, promise was made to get defendant another coyote and trap. They did not meet again until December 9, 1933, when they met in the Agnes store in Gardner. Defendant having just completed his round of trap inspection, went into the store prior to going home. It was his custom to carry a pistol for use in killing animals found in his traps. He was so armed at this time and again requested deceased to return his coyote and trap, which precipitated a heated argument and, the proprietor of the store requesting them to keep quiet, they went outside.

The evidence is conflicting as to which preceded the other, but a fist fight immediately ensued which lasted 25 or 30 minutes. In the course of the encounter, as the combatants became tired, they would take a brief rest and then renew the fight. The deceased was 18 years of age in perfect health, and strong of body. Defendant was the elder by a few years, slight of build, and had recently been crippled by being thrown from a horse, the fall resulting in a broken leg and severe injury to his right shoulder. He had discontinued the use of crutches only a day or two before the fight.

It is clear from all the evidence that Belloni administered a terrific blow to defendant behind the ear which seemed to daze him and while he was in that condition, he stopped for an instant, drew his pistol and fired one fatal shot killing deceased instantly. Defendant testified that he had no recollection of firing the shot and that on account of the many severe blows upon his head and face, he was in such condition that he had no recollection of the latter part of the encounter. Medical witnesses for defendant testified that it was possible, under the circumstances that the defendant was in a state of traumatic

amnesia and as a result he might have no recollection of what occurred and would not be responsible for his acts during the time his mind was in that condition.

December 16th, the district attorney petitioned the district court of Huerfano county for leave to file an information charging murder. Leave was granted and information filed on that date charging "That Dick Huffman * * * on or about the 9th day of December * * * at and within the County aforesaid did then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought kill and murder one Lawrence Belloni, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the same People of the State of Colorado."

Defendant presents 43 assignments of error, some with probable merit, and two of which challenge our attention. In substance these two assignments deal with the failure of the court to instruct the jury upon the defendant's theory of the case and objections to instructions given, and the refusal to give instructions tendered by the defendant.

The record discloses three kindred theories of defense: Accident, self-defense, and a mental condition resulting from the blows upon his head during the encounter. He claimed that he was so dazed from the severe beating he had received that he did not thereafter clearly know the nature of his actions and that while in such condition, he drew the pistol with the vague thought of causing his antagonist to cease beating him and that while so dazed, he accidentally discharged the weapon. In support of defendant's statement of his mental condition, there is substantial evidence given by other lay witnesses and medical experts. Dr. James Lamme, a physician and surgeon of 23 years' practice, residing at Walsenburg, after qualifying, testified:

"Q. From your experience, doctor, are you able to state whether a person who has received several blows upon and about the head, may be thereby rendered into a

state of semi-unconsciousness, to a degree that he would be incapable of forming an intention of performing certain acts while in that state, and afterwards not having any recollection of what acts he had done during that state of mind? A. Yes. Q. That is possible? A. Yes.'' (No cross examination).

■ It is well settled that however improbable or unreasonable the testimony of the accused may seem, he is entitled to an instruction upon the hypothesis that it may be true. *Crawford v. People,* 12 Colo. 290, 20 Pac. 769; *Van Wyk v. People,* 45 Colo. 1, 99 Pac. 1009; *Jabich v. People,* 58 Colo. 175, 143 Pac. 1092; *Stoltz v. People,* 59 Colo. 342, 148 Pac. 865.

The defendant tendered instructions numbers 2, 3, 6, 7 and 12, covering the theories of his defense. They were refused by the court and no similar instructions on these theories were submitted to the jury. Under the evidence, the presented facts required an instruction by the court upon the law pertinent to the issue. It is our opinion that the form in which instruction No. 12, was given by the court, if sufficient to cover some of the theories of the defense, was not only lacking as to theory of accident, but was equivalent to an express direction by the court that there was no accidental killing involved. The instruction was therefore erroneous, and according to the remarks of the court, made at the time of overruling the motion for a new trial, he entertained some doubt as to its correctness. This instruction is a duplicate of defendant's tendered instruction No. 9 with the words ''was accidental and'' eliminated.

■ Instruction No. 12: ''You are instructed that if you believe from the evidence introduced in this cause that the defendant did shoot and thereby kill the deceased, and you further believe from the evidence that such shooting ~~was accidental and~~ was not with evil design or intention or culpable negligence upon the part of the defendant to take the life of said deceased, then and in that event the homicide is excusable; and if you so be-

lieve from the evidence, or if you have a reasonable doubt thereof then and in that case you will find the defendant not guilty.''

This instruction is the only one given that could be said to touch upon the law applicable to any theory of the defense and, as it appears from the record before us, was tendered by the defendant, altered by the court without being rewritten as it should have been, before being submitted to the jury. We assume the transcript to be a true representation of the form of this instruction, as given, and it discloses a line drawn through the words, ''was accidental and '' but leaving the words clearly discernible. The effect of this in its changed condition upon the mind of the ordinary man or juror, was the same as though the court had said to the jury, in so many words, ''Gentlemen, there was no accidental killing in this case.'' Certain facts were presented, and the office of the instructions was to define for the jury, the legal principles governing such facts. Instructions should be sufficiently clear and explicit that a juror of ordinary intelligence cannot fail to understand them. We do not wish to be understood as even intimating an opinion that the testimony in support of these defenses is true, but as given it should have been covered by full, clear and explicit instructions. This doctrine is universally applied and is of vital substance.

The evidence in support of the theory of accidental killing, whether weak or strong, was submitted by defendant, and it should have been covered by a proper instruction. Under the circumstances here disclosed, the defense was not only wholly destroyed, its absence was indirectly pronounced and emphasized by the court in the manner and form conveyed by the instruction above discussed. This error is sufficient to justify reversal of the judgment without discussion of other questions raised by the assignments.

Judgment reversed and cause remanded for new trial.

Mr. Chief Justice Adams not participating.