No. 15,135.

PAYNE *v.* THE PEOPLE.
(132 P. [2d] 441)

Decided December 21, 1942.

Mr. S. E. CARY, Mr. MORTON M. DAVID, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as defendant. She and two young men, Earl Hooper and Willie Jones, were charged with the murder of Clarence Irving Mott. These men are herein referred to as Hooper, Jones and Mott respectively. Defendant, Hooper

and Jones were returned guilty in the first degree and sentenced to life imprisonment. To review that judgment as to her only, defendant prosecutes this writ and asks that it be made a supersedeas. She also requests, because she is destitute, that the cause be finally disposed of on this application. In this the attorney general joins and we concur. Twenty-two alleged errors are assigned. In our opinion but one of these deserves serious consideration, i.e., refusal of the court to give her tendered instruction No. 1.

In the early morning hours of August 24, 1941, Mott, a white man, was a guest in a cafe in that section of the city of Denver inhabited and frequented almost entirely by colored people. Defendant, Hooper and Jones, all colored, were there together. Mott had apparently disclosed the possession of money and a watch. When he left, the others followed, defendant considerably in advance. She shortly overtook him, asked and obtained a light for her cigarette, and engaged him in conversation on the subject of prospective immoral relations. They entered an alley where the discussion was interrupted by the appearance on the scene of Hooper and Jones who attacked Mott, knocked him down, beat his head against the pavement, and robbed him of his watch and a billfold containing five dollars. Defendant stood near by during the attack and thereafter the assailants accompanied her to her room. Later the five dollars was divided and the watch broken up by defendant and scattered by the others. Mott was found unconscious in the alley about 3:30 a.m. following, and taken to a hospital where he died that evening. We omit many collateral facts, all pointing to defendant's guilt. The evidence amply supported the verdict.

The theory of the state was that Hooper, Jones and defendant entered into a conspiracy to rob Mott, using defendant as a decoy. Her position was that she was no party to the conspiracy, knew nothing of it until the actual assault, and that her only crime, if any, was that

of an accessory after the fact. There is, and can be, no doubt of the guilt of Hooper and Jones of the conspiracy and assault. They admitted both on the stand. It is, however, admitted by the people that there never was an intent to kill.

 The court gave the instruction on first degree murder usual where the homicide is charged to have been committed in an attempt to perpetrate a felony; also the usual definitions of robbery and conspiracy, but no instruction on accessory after the fact and there was no such charge. Defendant's guilt was at all times denied. Proof of it depended entirely upon circumstances. If she was not a party to the conspiracy to rob she was not guilty of murder. No instruction given so advised the jury. That assumption might or might not have been spelled out of those given.

Defendant's tendered instruction No. 1, so far as it applied directly to the question under consideration, reads: "Before you can find the defendant Wanda Payne guilty, you must believe beyond a reasonable doubt * * * that the object and purpose in accompanying him [Mott] was in furtherance of a conspiracy and common design to rob." The first part of the instruction is an attempt to state the proposition in a different way and is probably open to objection, which is the only one made by the people, that it is a negative statement. At least it should have been reformed if given. Nor can we commend the portion above quoted for clarity. However, the intent of the whole and the fact that it presented defendant's theory, and her only possible defense, is apparent. The vital importance of definitely directing the jury's attention thereto by an unequivocal instruction comes home to us with crushing force when we glance briefly at the picture presented to the men in the box.

A white man has been killed in the perpetration of a robbery. Three negroes are charged. Two admit conspiracy to rob and robbery. The third, a woman of

twenty-two, admits membership in the world's oldest and most disreputable profession; that she is the "moll" of one of the perpetrators; that she was with them and their victim shortly before the assault; that she inveigled deceased into a dark alley where he was attacked; that she was given money which may have been taken from him in the perpetration of the crime; that she helped destroy evidence; and that she knows both highwaymen intimately. As a defense she says she was no party to the conspiracy to rob and had never heard of it; that she followed the eventual victim, conversed with him, led him into the alley and received money from him, solely in the prosecution of her usual vocation; that the additional money she received from her paramour may or may not have been proceeds of the robbery, since he frequently gave her money; that after she learned of the victim's death she helped destroy evidence as an act of loyalty to her friends. These admissions invoke every instinct of decency in the breasts of jurors and arouse every latent prejudice born of those instincts. Her life hangs on this slender thread. However loudly we may proclaim her evidence ridiculous and perjured and avouch its impotence to overturn the stubborn facts above recited, we cannot say it is not true. That is not our function. Neither can we say a jury would not believe it, or at least give it sufficient credence to raise a reasonable doubt and so require her acquittal. Juries sometimes return strange verdicts; inexplicable to trained and experienced lawyers and judges; but the strangest thing about them is that time occasionally places upon them the stamp of wisdom and truth. That is why we have jury trials. In any event the law, which makes every provision for the protection of even possible innocence, has neither overlooked such a situation as here confronts us nor issued its mandate in equivocal language. "No matter how improbable or unreasonable the contention, defendant was entitled to an appropriate instruction upon the hypothesis that it might be true."

*Jabich v. People,* 58 Colo. 175, 143 Pac. 1092; *Crawford v. People,* 12 Colo. 290, 293, 20 Pac. 769; *Huffman v. People,* 96 Colo. 80, 84, 39 P. (2d) 788.

It must be borne in mind that the "contention" referred to must be one grounded upon evidence, neither a mere fanciful invention of counsel nor one involving an impossibility. *Van Wyk v. People,* 45 Colo. 1, 18, 99 Pac. 1009.

For failure to instruct on the rule thus enunciated, and covered by the tendered and refused instruction, the judgment is reversed and the cause remanded for a new trial.