No. 19,450.

PAUL RENELL *v.* ARGONAUT LIQUOR CO., ETC., ET AL.
(365 P. [2d] 239)

Decided October 2, 1961.   Rehearing denied October 23, 1961.

Mr. KENNETH N. KRIPKE, Mr. WILLIAM C. MURRAY, JR., for plaintiff in error.

Messrs. WORMWOOD, O'DELL and WOLVINGTON, for defendant in error Jack Halstead.

Messrs. McCOMB, ZARLENGO and MOTT, Mr. VALENTINE W. LOGAN, Messrs. GREENBERG and YOELIN, for defendants in error Argonaut Liquor Co., et al.

*En Banc.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as Renell; to defendants in error Charles and Elizabeth Reuben as Argonaut; and to defendant in error Halstead by name.

The action was commenced by Renell to recover damages for personal injuries which he alleged were sustained as the result of an automobile collision which occurred at East 8th Avenue and Colorado Boulevard in Denver, at about 10:00 p.m., December 22, 1958.

It was alleged in the complaint that Halstead negligently drove an automobile into the rear of an automobile owned by Renell who "suffered a severe injury to his neck with nerve root irritation and other injuries." It was further alleged that Halstead was acting within the scope of his employment as an employee of Argonaut at the time of the collision; and that Argonaut "knew or reasonably should have known that the defendant Halstead was too drowsy, overworked and fatigued to drive an automobile on the public highway," but nevertheless directed him to make its deliveries.

Defendants denied negligence on the part of Halstead; affirmatively alleged contributory negligence of Renell; and that the accident was unavoidable. The issues were tried to a jury which returned a verdict for defendants and judgment entered thereon. Upon the trial of the

case counsel for Renell moved for a directed verdict in favor of plaintiff, which was denied. A written motion was filed after the verdict was received asking for the entry of a judgment in favor of plaintiff notwithstanding the verdict and for a new trial upon the issue of damages alone. This motion was denied as was a motion for new trial upon all the issues framed by the pleadings.

The evidence disclosed the following facts: Halstead was driving an automobile in the course of his employment by Argonaut at the time of the collision. He was making deliveries of merchandise. The car of Renell was one of six automobiles which were struck by the car Halstead was driving. Renell was either stopped or at a near stop at the intersection waiting for the signal light to change when his car was hit from the rear.

On cross-examination, when called for that purpose by counsel for Renell, Halstead testified in substance that he had been working extraordinarily long hours for a taxicab company; that he drove the cab until 3:15 a.m. on the morning of December 22, and with only about four hours rest following this shift on the cab he went to work for Argonaut at noon on that day, and at about 9:00 p.m. he was sent out to make deliveries. He admitted that he was tired, and stated that he didn't remember anything that happened between 9:00 p.m. and the time of the accident, but did remember being in the accident. He further stated, in response to the question of counsel for Renell, that it was the belief of those who conducted tests following the accident that he, Halstead, was the victim of a "simple fainting caused by overexhaustion." We quote the following from the transcript:

"Q. What happened to you Mr. Halstead that caused you not to remember? A. I don't really know. I don't have the answer to that. From the examinations they thought it was a simple fainting caused by overexhaustion. Q. They didn't find anything wrong with you in the — strike that. Did they take a brain wave test? A. Yes, sir. Q. With an encephalograph? A. Yes. Q. And

they didn't see anything wrong with the brain? A. That is right. Q. They took various glucose tests? A. Yes. Q. And they merely concluded from that you had simply fainted? A. Yes, sir. Q. And were over-tired? A. Yes, sir. Q. Do you agree with this? A. It must be, I have no other answer. Q. Mr. Halstead you think you may have fainted at the time you left the liquor store, and been unconscious in all your activities during the entire period? A. I undoubtedly was, but I was still moving about as the evidence shows, until the collision."

The foregoing evidence, and the testimony of a police officer to the effect that Halstead made a statement at the scene of the accident that he had "blacked out before the accident," form the only explanation which was made concerning the reason why the car driven by Halstead struck Renell's car and the five other automobiles.

No claim is made for damages to Renell's car. In fact if there was any it was very inconsequential. He testified concerning the "whip lash" injuries and damages which he claimed resulted from the collision. He also presented testimony of experts who gave opinions which were based primarily upon the history given by him rather than objective findings based on their own examinations. All the evidence of injury was challenged either by expert testimony offered by defendants or by the observations of subsequent employers, fellow employees, and by motion pictures produced in court showing plaintiff moving in normal fashion about his business without the cervical collar which he wore in the court room. He testified that it was necessary for him to wear the collar most of the time. He asserted that he lost his job by reason of the injuries he received and suffered loss of income. This latter contention was considerably weakened, if not mutilated, by his admission on cross-examination that the company by which he was employed at the time of the accident quit business in the city of Denver under circumstances from which the inference may be drawn that it ceased to do business under pressure

of federal investigation of its activities. Plaintiff was a vice-president of that company.

■ It is argued that the trial court erred in refusing to direct a verdict in favor of plaintiff on the issue of liability. All the evidence raising any issue of fact on the question of liability was brought into the case by counsel for Renell either through examination of his own witness or upon cross-examination of Halstead. While some of this testimony was hearsay and might well have been excluded if objections had been made, counsel for Renell is in no position to complain because his questions called for the hearsay answers which were given. There was sufficient evidence to go to the jury on the question of liability. *Iacino v. Brown,* 121 Colo. 450, 217 P. (2d) 266; *Eddy v. McAninch,* 141 Colo. 223, 347 P. (2d) 499.

■ If in fact defendant Halstead "blacked out" or "fainted" under circumstances not foreseen by him, he would not be answerable as negligent for events which occurred while he was blacked out or in a faint. It cannot be said that there is no evidence upon this issue. Counsel for Renell saw to it that Halstead's explanation appeared in the record. It was exclusively within the province of the jury to believe or disbelieve that Halstead had blacked out or fainted. It was exclusively within the province of the jury to determine whether he knew or should have known that he might "black out" or "faint" because of exhaustion. We cannot say as a matter of law that every person who drives an automobile on a city street on a day following a night in which he only had four hours sleep, shall be charged with knowledge that he may at any time "black out." Upon this phase of the problem the jury was instructed as follows:

"INSTRUCTION NO. 9

"The Court instructs the jury that if you find from a preponderance of the evidence that shortly before the accident in question the defendant Halstead was suddenly stricken by illness which he had no reason to anticipate and whereby he was rendered unconscious

and thereby lost control of his automobile, and if you further find that the accident was proximately caused by said sudden illness, then and in that event your verdict shall be for the defendants.

"If on the other hand the defendant Halstead was not suddenly stricken by illness or if you find he did have an illness but had reason to anticipate such illness and the resulting collisions and damage were proximately caused by such illness, then and in that event your verdict shall be for the plaintiff.

### "INSTRUCTION NO. 10

"If you find from the evidence that the defendant Halstead knew or in the exercise of reasonable care should have known that he was in such a state of fatigue or exhaustion from overwork or lack of sleep or both that he could not operate a motor vehicle on a public highway with reasonable care for the safety of himself or others, you must find that his conduct in driving a vehicle on a public highway under such circumstances was negligence."

The only objection to Instruction No. 9 above was that there was no evidence upon which to base it. No objection whatever was made to Instruction No. 10. These instructions adequately defined a theory upon which defendant Halstead rested his case. We have repeatedly held that in jury trials the theory of the litigants must be presented to the jury if there is evidence to support it. As stated by this court in *Payne v. People,* 110 Colo. 236, 132 P. (2d) 441:

" * * * However loudly we may proclaim her evidence ridiculous and perjured and avouch its impotence to overturn the stubborn facts above recited, we cannot say it is not true. * * * No matter how improbable or unreasonable the contention, defendant was entitled to an appropriate instruction upon the hypothesis that it might be true. * * * "

Numerous decisions of this court have sustained this principle both before and after the opinion in the

case cited. In a trial by jury it is not the province of the appellate court to invade the province of the jury and determine that it should not have believed a theory of defense which has support in the evidence. As stated by Mr. Justice Burke in *Payne v. People,* supra, "That is not our function." We do not mean to say that the record before us discloses that the jury did base its verdict on the theory of defense under discussion. We only assert that the jury might have resolved the issue on that ground. We cannot assume that it resolved the issue of liability against plaintiff because the thrust of the defense was directed to the proposition that Renell had suffered no injury. While all the evidence offered by defendants in the action challenged the good faith of the claim that Renell was injured or damaged, there was sufficient evidence, if believed by the jury, to justify the conclusion that no actionable negligence on the part of defendants was shown, and no damage resulted from the incident complained of by Renell.

We are satisfied that Renell was not prejudiced by any instruction given by the trial court over objection, and his rights were not adversely affected by the refusal of the trial court to give any instructions tendered by his counsel.

Every presumption favors the correctness of the verdict and the conclusions and findings of the jury will not be disturbed under the circumstances disclosed by the record in this case. The judgment therefore is affirmed.