No. 18,908.

JOHN K. BARNHISEL v. PEOPLE OF THE
STATE OF COLORADO.
(347 P. [2d] 915)

Decided December 14, 1959.

Messrs. SEAVY & SEAVY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GERALD HARRISON, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFF in error was found guilty by a district court jury of assault with the attempt to commit rape. We will refer to him as the defendant.

In summary, the evidence was that the alleged victim, an unmarried female, lived by herself. She had retired but was awakened when someone (later identified as defendant) threw her from the head to the foot of the bed and pinned her down. She testified that she struggled and screamed; that she recognized that it was a man who attacked her; that he told her to be quiet; that a laundry bag was thrown over her face to cover her mouth and nose; that as she continued to scream and fight she was "more or less" dragged from the apartment; that she was clothed only in yellow pajamas; that the man had his arms around her and pushed her in front of him; that he soon picked her up and threw her over his shoulders and started walking toward the river (described in the course of the testimony as behind her apartment house); that he threw her down once and picked her up again and carried her into a dip in the dike along the river; he started pulling or tearing at her pajamas, and she struggled to prevent this. She testified that no part of his person was near her in any way outside of having her pinned down; that he then carried her to the top of the dike, and then the two of them walked across the bridge, returned to her apartment and

smoked cigarettes. Defendant lay down on the couch and went to sleep. She then went next door to the landlady and the police were called.

The prosecuting witness testified first that there were no suggestive movements on the part of the defendant, and later, after a recess, in response to other questions, she said that, "Well, he was, well, he was moving up and down and making moves with his body. The lower part of his body."

After defendant had previously testified in his own defense, that he did not intend to rape the victim and that he had never forcibly attempted to rape anyone, the following questions and answers were put to him on cross examination:

"Q. Mr. Barnhisel, you say you have never forcibly raped anyone. Does this include attempt to rape? A. I can truthfully say that I have never attempted to rape anyone. Q. Mr. Barnhisel, isn't it true that earlier in that very evening, right there in that evening, you attacked a girl and had to be taken off of her? A. That is not true.

\* \* \*

"Q. Didn't you have [another] (name deleted by us) girl there earlier that evening? A. She was there but not with me. Q. You deny that you seized her person and she screamed? A. I might have laid a hand on her and she screamed, but I certainly did not try to rape the girl, to which I can afford witnesses."

A friend of defendant, called to testify as to the conduct of the defendant earlier in the evening, was questioned about the other girl. This witness denied that the defendant had at any time attempted to rape the other girl. He responded to other questions on the cross examination as follows:

"Q. Did he [Barnhisel] at any time attempt to rape this girl, as Mr. Rowe intimated by his questions? A. He did not.

\* \* \*

"Q. Isn't it true that after that light went out, Mr. Barnhisel threw this girl on the bed and she started screaming? A. No. Q. You realize that you are under oath here, sir? A. I do. She was on the bed; he did not throw her on the bed. Q. She did make a little outcry, didn't she? A. You said screaming. Q. Yes. A. She did not scream. Q. What did she do, then? A. She was talking, but I couldn't call it an outcry. Q. Then Barnhisel did have her on the bed with the lights out there, didn't he?

\* \* \*

"Q. And she was complaining somewhat about her treatment, was she not? A. She wanted to go home."

A number of points for reversal are urged by the defendant, but only three are of merit, and we shall consider them as follows: 1. That the court erred in submitting to the jury an instruction on "similar transactions" which the jurors were told they could consider for the purpose of establishing the element of *intent* and *motive;* 2. the court erred in refusing "Defendant's tendered instruction No. 4" which asked the court to instruct the jury on all of the elements of the crime (coupled with this assignment is the objection to instruction No. 6 given by the court which merely defined the crime of rape and not the crime charged in the information); 3. the court erred in refusing to submit to the jury a verdict on the lesser included offense of simple assault.

FIRST QUESTION TO BE DETERMINED.

*Was it proper for the court to give an instruction on "similar offenses"?*

It was not.

■ The authorities are numerous and uniform on the proposition that an instruction should, in all cases, be based on the evidence. Therefore an instruction, although in every respect announcing a correct principle of law, is erroneous if it implies or assumes the existence of evidence not in the record. From the portion of

the record quoted it is evident that the district attorney by his cross examination of defendant and the other witness attempted to imply to the jury that another girl, whom he named, had been the subject of a similar attempt by the defendant in the early evening. He attempted to get this before the jury on two occasions — in his cross examination of defendant and another witness, both of whom denied that any such attempt occurred. The district attorney did not produce the other girl or any other witness to show that such attempt occurred, or to impeach the denials of the two witnesses. Under this state of the testimony the court instructed the jury "*there has been some evidence introduced in this case* in regard to alleged similar transactions to that involved in this case *which was admitted by the court* for the purpose of showing the intent, motive or design of the defendant." Thus the jury could easily have been mislead and given the impression that in the mind of the court facts such as the instruction assumes were to be inferred from the questions of the district attorney. The instruction strongly suggests that the denials of the witnesses could be ignored and that the accusations of the district attorney amounted to affirmative evidence on the proposition and could be believed. *McAndrews v. People,* 71 Colo. 542, 208 Pac. 486.

SECOND QUESTION TO BE DETERMINED.

*Should the jury have been instructed on the crime of simple assault as a lesser included offense, and should a verdict on simple assault have been submitted?*

This question is answered in the affirmative.

██ In this case the elements of assault are common in both offenses. The felony charged is almost identical with the crime of "assault with a deadly weapon" or "assault with intent to do great bodily harm." In *People v. Hopper,* 69 Colo. 124, 169 Pac. 152, it was pointed out that where there is no evidence of the specific intent required to determine the defendant guilty of the precise offense charged in the informa'ion, cr where the evi-

dence, as in this case, might be insufficient to remove the reasonable doubt which might be in the minds of the jury as to the intent, under the same evidence the defendant might be found guilty of simple assault. In the instant case, in the absence of the damaging instruction on similar transactions, the jury might have found that the quantum of proof necessary to establish the intent to commit rape was lacking, but was sufficient to establish an assault upon the victim. In the Hopper case the court said that assault with intent to commit bodily harm includes all the elements of simple assault, and therefore includes a charge of simple assault. It does not include the elements necessary to constitute a battery. The reasoning in the Hopper case applies with equal force here.

THIRD QUESTION TO BE DETERMINED.

*Was it error for the court to refuse defendant's tendered instruction No. 4 defining all the essential elements of the crime?*

This question is answered in the affirmative.

The court's instruction numbered six, which defined the crime of rape' only, was erroneous under the evidence and the offense charged in this information. The defendant tendered the following instruction:

"You are further instructed that an assault is an unlawful attempt, coupled with a present ability to commit a violent injury on the person of another.

"Rape, the crime that defendant must have had the specific intention to commit at the time of the assault, is an act of sexual intercourse, accomplished with, by or between a male and a female person where such female person is not the wife of the principal perpetrator by the male person of whatever age, or the female person whatever her age, resists, but her resistance is overcome by force or violence or by the male person of whatever age or the female person whatever her age is prevented from resistance by threats of immediate and great bodily harm accompanied by apparent power of execution.

"The elements of assault and specific intent on the

part of the assaulter must coexist in order to constitute the crime of assault with intent to rape."

██ It is to be seen that this is the definition of the crime involved since it sets forth the three elements: 1. the assault; 2. the intent to commit rape; 3. the purpose to effect such intent. In *Crump v. People,* 129 Colo. 58, 266 P. (2d) 1100, while the court did not have before it the question of the sufficiency of an instruction, it was there pointed out that the elements of assault and specific intent on the part of the assaulter must co-exist in order to constitute the crime. It, therefore, follows that an instruction which fails to define all the necessary elements of the crime is deficient. An instruction which was approved in *Dunn v. State,* 58 Neb. 807, 79 N.W. 719, which we believe covers the crime as defined in C.R.S. '53, 40-2-34, is as follows:

"The court instructs the jury that to constitute the crime charged in the second count of the information, there must have been an attempt to commit rape, and that intent must have been manifested by an assault for that purpose upon the person of the prosecutrix, .............; and, in order to convict the defendant, the jury must be satisfied beyond a reasonable doubt that he did use force, and that against the will of the said ............., in an attempt to have sexual intercourse with her. You are instructed that to sustain a conviction for assault with intent to commit rape, the evidence must show that the accused had a purpose, not only to have sexual intercourse with the prosecutrix, but must have intended also to use whatever degree of force might be necessary to overcome her resistance and accomplish his object."

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE SUTTON and MR. JUSTICE HALL concur.