No. 20782.

ARTHUR RAY HAAS *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(394 P.2d 845)

Decided August 24, 1964.

Mr. JACK K. AGEE, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mrs. Aurel M. Kelly, Special Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

We will refer to plaintiff in error as the defendant. In the information filed against him it was alleged that he made:

"* * * an assault upon CLAUDE GLIDDEN with a deadly weapon, instrument or other thing, namely, a homemade hand grenade, with intent then and there feloniously, unlawfully, wilfully and maliciously to commit a bodily injury upon the person of said CLAUDE GLIDDEN, * * *."

He entered a plea of not guilty, and upon trial was found guilty of the crime of simple assault. No motion for a new trial was filed by him. He did, however, file a motion to set aside the verdict, and for the entry of a judgment of acquittal. The grounds asserted in said motion were that,

"* * * the evidence presented was not sufficient to warrant conviction of simple assault as there was not an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

This motion was denied and the court entered judgment on the verdict. Defendant is here on writ of error seeking reversal of said judgment and an order directing the trial court to dismiss the action.

The attorney general asserts, and we agree, that the record before this court presents only two questions for determination. They are as follows:

"I. Does the failure to move for a new trial as required by Rule 37 (b) of the Colorado Rules of Criminal Procedure preclude review of the alleged error?

"II. Do the acts committed by the defendant constitute the crime of simple assault?"

The defendant made a hand grenade from various materials that had been in his possession. With this grenade he went looking for an individual by the name of Claude Glidden with whom he previously had an altercation and who had allegedly threatened him on another occasion. It should be noted that Mr. Glidden was the individual who was supposed to have been assaulted with the alleged deadly weapon but he did not appear in court.

In answer to a question as to his reason for making the grenade defendant testified:

"A. Well, on the previous occasion, the last previous occasion I had seen Claude prior to me going to Peterson Field, he had two friends and they had done a rather thorough job of working me over, and I assumed naturally that they were probably in his unit, being military we usually run around with people we are stationed with, and if I should happen to bump into them again, there would be a high chance of meeting three instead of one, and if there were three they would try to give me another working over like the first one, so I decided rather than take a chance on the three meeting, I would carry this thing and detonate it on my person if I was jumped by more than one person."

Defendant went to Peterson Field in an attempt to locate the said Glidden but could not find him. He then went to a public restaurant and handed the grenade wrapped in a paper sack to one Anita Hummer. He asked her not to look at it but to give it to Claude, that he would know what it meant; the said Anita Hummer took the paper bag to the kitchen and gave it to the cook. When she asked the cook to tell her what was in there, he took the paper bag and opened it and said that it looked like a bomb. The cook then carried the sack and put it out in the dump. According to the testimony of Anita Hummer, the said Glidden went out to the garbage can

behind the building, picked up the sack and looked in it. Anita Hummer contacted Claude Glidden, instead of the police, concerning the paper sack even though it was obvious that it contained a bomb.

Sgt. Vernon L. Hyde, the expert witness for the People, testified that the bomb would do bodily harm to any person within the immediate area of five feet. He further testified that the pin in the grenade was intact and it would have to be pulled before the fuse could be activated and function normally; the pin could not fall out and it would, in fact, have to be pulled out.

At the conclusion of the People's evidence, defendant moved for a judgment of acquittal under Rule 29 (b) of the Colorado Rules of Criminal Procedure, which motion was denied. At the conclusion of all the evidence defendant made the same motion for judgment of acquittal and this motion also was denied.

The statutory definition of the crime of which defendant was convicted is as follows:

"An assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another." C.R.S. '53, 40-2-33.

To sustain the charge of assault, each of the two elements of the crime must be shown to exist and in addition it must be shown that they existed at the same time. *Crump v. People,* 129 Colo. 58, 266 P.2d 1100; *Barnhisel v. People,* 141 Colo. 243, 347 P.2d 915. In the instant case defendant admittedly had made preparations to do injury but preparation alone does not constitute the commission of a crime. *Lewis v. People,* 124 Colo. 62, 235 P.2d 348. Assuming that the defendant intended to commit an assault upon the person of Claude Glidden the evidence discloses no overt act done with the intent to commit the offense. With his grenade in his possession defendant went to the Airport Restaurant at Peterson Field in search of his adversary. Not finding him there he handed a paper sack containing

the grenade to Anita Hummer, a waitress at the restaurant, with directions to deliver the sack to Claude. These were defendant's only overt acts.

It is admitted that the homemade hand grenade, which the defendant had contrived, contained a safety device consisting of a cotter key which had been bent back to hold itself in place. Until this safety pin was intentionally removed the instrument was harmless. The delivery of the grenade to Anita Hummer was the negation of both unlawful attempt and present ability. At the moment defendant relinquished possession of his instrumentality he had to have known that it was innocuous as a weapon without the intentional removal of the safety device; consequently it cannot be said that his overt act of delivery to Anita Hummer was done with intent to commit the crime. Indeed, the interference of some cause to *prevent* the battery was wholly unnecessary. On the contrary, no injury could have resulted except for the interference of some cause, namely, the ejection of the safety device. And the defendant knew it.

These same facts account for the absence of the second element of the offense — the present ability to commit a violent injury on the person of another. If ever there was coexistence of attempt and ability to inflict injury, it had to be before defendant relinquished possession of the grenade. At the moment he transferred possession he also transferred the ability to do harm. He no longer had the ability to commit a violent injury on the person of another, either *in praesenti* or *in futuro*. There was no competent evidence to sustain the judgment, and the motions made by counsel for defendant, which raised the question of the sufficiency of the evidence, should have been sustained.

At every appropriate stage in the proceedings the attorney for defendant asserted and re-asserted his motion for judgment of acquittal under Rule 29 (b) of the

Colorado Rules of Criminal Procedure. This rule reads in pertinent part as follows:

"If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the motion is denied and the case is submitted to the jury, the motion may be renewed within ten days after the jury is discharged or within such additional time as the court may fix during said ten-day period, and it may include in the alternative a motion for a new trial. If a verdict of guilty is returned, the court may, on such motion, set aside the verdict and order a new trial, or enter judgment of acquittal. If no verdict is returned, the court may order a new trial or enter judgment of acquittal."

The attorney general agrees that the crime of which defendant was convicted was not proven by any evidence admitted upon the trial. It is argued however that under pertinent Rules of Criminal Procedure the defendant is in no position to urge the point.

The following provisions of the Colorado Rules of Criminal Procedure are called to our attention:

RULE 37 (b):

"A writ of error shall not issue to a final judgment against a defendant unless a motion for a new trial or in arrest of judgment has been filed as provided by Rules 33 and 34 and a clerk's certificate to that effect has been filed with the Supreme Court. Only questions presented in such motions will be considered on review, except that plain error or defects affecting substantial rights may be noted although they were not brought to the attention of the trial court."

RULE 33, which provides, inter alia:

"* * * The motion for a new trial shall be in writing and shall point out with particularity the defects and errors complained of. * * *"

Defendant filed his motion under Rule 29 (b) above quoted. The purpose of the rule requiring the filing of a motion for new trial was fully satisfied by the filing of the motion to set aside the judgment and for acquittal. The only purpose of requiring a motion for a new trial is to afford a fair opportunity to the trial court to correct its own errors. *Dickson v. People,* 82 Colo. 233, 259 Pac. 1038. Defendant in the instant case did not want a new trial. Under the circumstances of this case the motion which was filed under Rule 29 (b) was sufficient and the denial of that motion by the trial court placed the defendant in position to seek review of the judgment.

The judgment is reversed and the cause remanded with directions to dismiss the action and discharge the defendant.

MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.