No. 21583.

DONALD EUGENE DANIELS *v.* THE PEOPLE OF THE STATE OF COLORADO.
(411 P.2d 316)

Decided February 7, 1966.　　Rehearing denied March 14, 1966.

DONALD L. LOZOW, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

DANIELS was charged with causing a death by operating a motor vehicle while under the influence of intoxicating liquor, as such offense is defined by C.R.S. 1963, 40-2-10. More specifically, the charge was that Daniels caused the death of one Joseph L. Carter by operating a motor vehicle in a reckless, negligent and careless manner while under the influence of intoxicating liquor. To this charge Daniels pled not guilty, and a trial by jury ensued. The jury returned a verdict finding Daniels guilty as charged in the information, and he was thereupon duly sentenced to a term of from 2 to 4 years in the state penitentiary. By writ of error Daniels seeks reversal of this judgment and sentence.

Daniels' only contention in this court is that the trial court allegedly committed error in refusing to instruct the jury on the crimes or offenses of involuntary manslaughter, driving while under the influence of intoxicating liquor, reckless driving and careless driving. In connection with such refusal, error is additionally predicated on the trial court's further refusal to submit to the jury appropriate forms of verdicts concerning each of these various offenses. In support of this assignment of error Daniels asserts that involuntary manslaughter, driving while under the influence of intoxicating liquor, reckless driving and careless driving are *all* lesser of-

fenses which are included in the crime of causing a death by operating a motor vehicle while under the influence of intoxicating liquor, as defined in C.R.S. 1963, 40-2-10, and that each and all of these lesser included offenses under the evidence should have been submitted to the jury by appropriate instruction and form of verdict. In this regard, the trial court declined to go along with Daniels' request, and submitted to the jury only two forms of verdict, *i.e.*, a "guilty" and a "not guilty" form of verdict as to the crime defined in C.R.S. 1963, 40-2-10. Hence, the sole issue before us on review is whether the trial court was correct in so doing, inasmuch as such is the only matter raised by Daniels in this court.

In *People v. Futamata*, 140 Colo. 233, 343 P.2d 1058, this court laid down the following test for determining whether a particular offense, though not charged, is nevertheless "included" in the offense which is charged: if the greater of two offenses, which is charged, "includes all of the legal and factual elements of the lesser," then the greater includes the lesser; but if the lesser offense "requires the inclusion of some necessary element" which is not an essential and material element in the greater offense, then the lesser offense is not included in the greater offense. In other words, the greater offense' includes a lesser offense when the establishment of the essential elements of the greater *necessarily* establishes all of the elements required to prove the lesser. In this connection it should be noted that the character of an offense is determined, not by the evidence which may be legally *admissible* under the charge, but by the evidence *which is required to sustain the charge.*

Comparing, then, the essential elements of involuntary manslaughter to those of the crime of causing a death while driving a motor vehicle under the influence of intoxicating liquor, as defined in C.R.S. 1963, 40-2-10, it becomes clear that involuntary manslaughter is not a lesser included offense in a charge brought

under C.R.S. 1963, 40-2-10. And the fact that the attorney general "confesses" error in this particular is not dispositive of the matter. Such "confession of error" is based upon *Goodell v. People,* 137 Colo. 507, 327 P.2d 279, and for reasons which will be developed more fully, that case does not control the present controversy.

Involuntary manslaughter cannot be predicated upon so-called ordinary or simple negligence. Rather a material and essential element in a charge of involuntary manslaughter is wilful and wanton misconduct, sometimes referred to as gross or criminal negligence — and not mere negligence. See *Bennett v. People,* 155 Colo. 101, 392 P.2d 657; *Bates v. People,* 155 Colo. 87, 392 P.2d 596; and *Trujillo v. People,* 133 Colo. 186, 292 P.2d 980.

On the other hand, wilful and wanton misconduct, sometimes referred to as gross or criminal negligence, is not a *necessary* and material element in a prosecution under C.R.S. 1963, 40-2-10. Rather, a prosecution under C.R.S. 1963, 40-2-10 may be predicated on only negligent or careless driving, *i.e.,* ordinary or simple negligence, as opposed to gross or criminal negligence. In other words, in this connection only negligent and careless driving is *required* to sustain the charge. See *Espinosa v. People,* 142 Colo. 96, 349 P.2d 689; *Kallnbach v. People,* 125 Colo. 144, 242 P.2d 222; and *Rinehart v. People,* 105 Colo. 123, 95 P.2d 10.

Recapitulating, then, gross or criminal negligence, *i.e.,* wilful and wanton misconduct, is a necessary and material element in a charge of involuntary manslaughter, but such is not a necessary element in the crime defined in C.R.S. 1963, 40-2-10. Hence, the greater offense does not include *all* the legal and factual elements of the lesser, as the lesser offense requires the inclusion of an element which is not a necessary or material element in the greater offense. Such being the case, involuntary manslaughter is not a lesser included offense in a charge based on C.R.S. 1963, 40-2-10.

The relationship between a charge brought under C.R.S. 1963, 40-2-10 and involuntary manslaughter is deemed analogous to the situation existing in those jurisdictions where the legislature has enacted a so-called negligent homicide law, *i.e.*, death resulting from either the negligent or reckless operation of an automobile. In such jurisdictions it has been generally held that though there be a statute defining the common law crime of manslaughter, a subsequently enacted statute regarding negligent homicide defines a crime which is different and distinct from the crime of manslaughter and because they are different and distinct crimes a verdict of acquittal of negligent homicide was not inconsistent and did not legally preclude a conviction on a charge of manslaughter arising out of the same automobile accident. *People v. Crow,* 48 Cal. App.2d 666, 120 P.2d 686. See also *People v. Amick,* 20 Cal.2d 247, 125 P.2d 25.

In this same regard, see 22 C.J.S. pp. 770-772, where it is stated that the crimes of negligent homicide and manslaughter are different and distinct crimes, that the former is not included in the latter, and the two offenses are within the rule that the prosecution of one does not bar the prosecution for the other. Finally, see *People v. Garman,* 411 Ill. 279, 103 N.E.2d 636, where the Supreme Court of Illinois held that even the crime of "reckless" homicide occasioned by the operation of a motor vehicle and the crime of manslaughter are separate and distinct offenses and said that "where the offenses, though arising from the same act, are separate and distinct in law, the defense of double jeopardy is not available regardless of how closely they are connected in point of fact."

▇ Daniels' further contention that the trial court erred in also refusing to instruct the jury as to drunk driving, reckless driving and careless driving, and in connection therewith to submit appropriate forms of

verdict, on the theory that they too are lesser included offenses, is held to be without merit. It is conceded that there is some diversity of judicial thought as to whether the offenses of careless driving, reckless driving, drunken driving, and the like, are lesser included offenses in a crime such as that denounced in C.R.S. 1963, 40-2-10. We conclude that the majority rule is that such offenses are not so included. It should be observed that offenses such as careless driving, reckless driving and drunken driving were enacted for the purpose of regulating the movement of vehicular traffic on our streets and highways and that such are not concerned with the consequences flowing from, for example, drunken driving. In other words, when the general assembly in 1923 enacted into law that which now appears as C.R.S. 1963, 40-2-10, it was dealing with a specific problem, *i.e.*, a *homicide* occasioned by the negligent operation of a motor vehicle by one who is under the influence of intoxicating liquor. No doubt at the time this particular statute was enacted, there were other statutes, as well as ordinances, denouncing drunk driving, reckless driving and careless driving. But this particular statute, *i.e.*, C.R.S. 1963, 40-2-10, is not concerned with drunk driving, reckless driving, or even careless driving, *as such*. Rather this statute evidences a legislative concern for the *result* which flows from the reckless, negligent and careless operation of a motor vehicle by one who is under the influence of intoxicating liquor, the result being the *death* of a human being. In this regard, see *e.g., State v. Empey,* 65 Utah 609, 239 Pac. 25, where it was held that a conviction for driving a motor vehicle in a careless and reckless manner and when under the influence of liquor did not bar a subsequent prosecution for involuntary manslaughter for the reason that the offense of careless, reckless and drunken driving was complete *before* the ensuing collision which resulted in a death, and which latter event, *i.e.*, the death, formed

the basis and gravamen for the manslaughter charge. In that case the Supreme Court of Utah said:

"The offense charged in the complaint on which defendant was tried in the justice court was complete before his automobile struck the automobile in which Miss Baker was riding. He necessarily would be guilty of the offense there charged, although he had not struck or touched the other automobile. The first offense cannot, therefore, be part of the second one, for which he was tried in the district court. The offense of driving an automobile on a highway in a careless and reckless manner, and at an excessive rate of speed, especially when under the influence of intoxicating liquor, was created for the very purpose of preventing collisions and consequent injury to others who may be on the highway. To the mind of the writer, it would be a travesty of justice to hold that because one is convicted of having driven his automobile on a public highway in a careless and reckless manner, while in a state of intoxication, that such a conviction is a bar to a charge of manslaughter which was the result of the carelessness and recklessness of the driver of the automobile.

"It would be just as reasonable to contend that a conviction for the offense of indulging in profane and abusive language is a bar to a prosecution for an assault and battery, or a homicide, which may result from the use of profane and abusive language. The use of abusive language, which is calculated to provoke assaults or worse, was made an offense and punished for the sole purpose of preventing personal violence. The offense of the use of abusive language is, therefore, complete before any violence occurs, and when the latter occurs it may also be punished according to the gravity of the offense. So, here, the two offenses — careless and reckless driving and involuntary manslaughter — are as separate and distinct as day and night. Nor is it correct to say that because particular consequences may result from certain acts that such

acts, in contemplation of law, necessarily make such consequences a part of such acts. Moreover, where certain acts are prohibited by law the prohibited acts may be punished as a separate and distinct offense, while the consequences which may, and at times do, follow, but are not necessarily the result of such prohibited acts, may likewise be punished as a separate and distinct offense. In this case, therefore, the district court was clearly right in holding that neither the facts nor the offense charged in the information filed in that court were covered by, or included within, the acts and offense charged in the complaint filed in the justice court upon which the defendant was convicted and fined.".

In like vein, see *State v. Shoopman,* 11 N.J. 333, 94 A.2d 493, where after citing with approval *State v. Empey, supra,* the Supreme Court of New Jersey, held that an acquittal on a charge of reckless driving did not bar a subsequent prosecution of the defendant on the charge of causing a death by reckless driving. Without belaboring the point, we now hold that neither careless driving, reckless driving nor drunk driving is a lesser included offense in the charge filed in the instant case against Daniels. In support of this conclusion see *State v. Bacom,* 159 Fla. 54, 30 So.2d 744, 172 A.L.R. 1050; *Campbell v. State,* 215 Ark. 785, 223 S.W.2d 505; *People v. Herbert,* 6 Cal.2d 541, 58 P.2d 909; 7 Am. Jur.2d pp. 889-890; 8 Blashfield Cyclopedia of Automobile Law and Practice, pp. 534-551; and 172 A.L.R. pp. 1053-1066.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ dissent.

MR. JUSTICE DAY dissenting:

I disent, at least from that portion of the majority opinion denying plaintiff in error an instruction and verdicts on involuntary manslaughter. He will be referred to herein as either Daniels or defendant.

Daniels is in this unique situation: The Attorney Gen-

eral representing the People of the State of Colorado, has confessed error in this case and has admitted that insofar as Daniels is concerned the trial court should have instructed the jury on the lesser offense of manslaughter and should have submitted verdicts to the jury on that charge.

The majority opinion does not take care of the case in the posture it is presented by the parties to the litigation.

One of the very necessary propositions in consideration of this writ of error is that the defendant was deprived of an instruction and a verdict embracing his theory of the case. We have said a defendant is always entitled to instructions — yes and verdicts, too — on his theory of the case. *Hernandez v. People,* 156 Colo. 23, 396 P.2d 952; *Johnson v. People,* 145 Colo. 314, 358 P.2d 873; *Payne v. People,* 110 Colo. 236, 132 P.2d 441.

Daniels did not seriously dispute any of the evidence against him except that pertaining to intoxication. He denied that he was inebriated. However, so overwhelming was the balance of the evidence that one could hardly expect a clear-cut decision based on intoxication or non-intoxication. That issue was easily beclouded. As a matter of fact, nowhere in the instructions was the jury told that if they found he was not intoxicated or if on this subject they entertained a reasonable doubt, they were compelled to acquit him. Of course he did not ask for any such instruction, but instead asked for consideration of the lesser offense because of the fact that his testimony, if believed, did not exonerate him of the death he caused as the facts hereinafter delineated will show.

The evidence established that shortly before the accident in which the defendant was involved, one Carter (who was killed in the accident which formed the basis of the charge against Daniels) had parked his truck at the curb immediately to the rear of another truck which had a flat tire and which Carter was called to repair. The deceased was in the process of repairing the tire

on the second truck when the collision occurred. Defendant Daniels ran into the rear of the Carter truck and propelled it forward, pinning Carter between the two trucks and causing his death.

Immediately prior to the accident Daniels was observed by witnesses driving in an obviously erratic manner. He was seen driving in "spurts," weaving between the lines of traffic, and he had struck the curbing on several occasions before finally striking the parked truck. Subsequent to the collision Daniels was observed lying in the front seat of his automobile, and witnesses testified that his face was flushed, his eyes bloodshot, and his breath alcoholic, and that, in their opinion, he was in an intoxicated condition. There was some testimony from some of the witnesses that his speech was confused and slurred.

Daniels, in explaining his erratic driving and his striking of the curbing, admitted that he had slept only two hours the night before; that he had had two shots of whiskey shortly before the accident; and that he was driving to his brother's home for sleep. He explained that he fell asleep at the wheel and was awakened when he hit the curb, that he continued to drive on, and that he fell asleep again or "blacked out" when the accident occurred.

Various sobriety tests involving physical dexterity, balance and coordination were administered by police officers who stated that in their opinion he demonstrated that he was intoxicated. A "breathalyzer" test was given to the defendant, which, according to expert opinion, indicated blood alchohol at a level which would produce intoxication. Several exhibits were identified, offered and received in evidence pertaining to the results of the "breathalyzer" tests.

Daniels, who took the stand, testified that his driving ability was not impaired by the two shots of whiskey and that he performed all of the sobriety tests satisfactorily.

With such a strong case of wilful and wanton conduct from eye witnesses who observed Daniels' erratic driving, the court gave the jury instruction No. 8 as follows:

"You are instructed that the mere happening of an accident does not raise any presumption of the guilt of the defendant.

"For negligence of any type to exist you must first find that the defendant owed a duty to the deceased to act with care.

"Criminal negligence is such a failure to observe the standard of conduct of an ordinarily careful and prudent person under the conditions and circumstances, that the actor's conduct partakes of a reckless disregard of life and a wilful disregard of the safety of others; such conduct is the equivalent of the intentional doing of an act with knowledge that substantial harm will result and with a wanton and reckless disregard of the probable consequences of said act."

Thus we see that the court does not have before it a case predicated upon simple negligence, and the Attorney General aptly pointed this out in the following summation:

"* * * involuntary manslaughter is, *at least as far as this case is concerned,* a lesser offense of causing a homicide while operating a vehicle under the influence. We have also shown that an essential element of the crime charged, that the defendant was under the influence, *was in dispute.* Without going into unnecessary detail we believe that defendant's conduct, that is driving in an erratic manner, causing another driver to leave the road, striking an obviously visable vehicle from behind, and, *if defendant's version is accepted,* continuing to drive after once falling asleep at the wheel, are evidence of defendant's gross and wanton disregard for the rights and safety of others. These acts lead to the conclusion that the defendant realized the dangers involved in his conduct, but deliberately avoided all precaution to prevent the disaster. We, therefore, believe

that there was ample evidence upon which defendant could have been convicted of the crime of involuntary manslaughter." (Emphasis supplied.)

Conduct requisite for conviction of involuntary manslaughter has been defined by this court as a reckless and wanton failure to exercise the care and caution that a reasonably prudent person would have exercised under similar circumstances such as to indicate a reckless and wanton disregard for the safety of others. *Trujillo v. People,* 133 Colo. 186, 292 P.2d 980; *Bennett v. People,* 155 Colo. 101, 392 P.2d 657.

Thus, in this case, at least, all of the elements of involuntary manslaughter, absent proof of intoxication or if upon this question there was a reasonable doubt, are present. When the majority opinion says, "prosecution under C.R.S. 1963, 40-2-10, *may be* predicated on only negligent or careless driving, *i.e.,* ordinary or simple negligence, as opposed to gross or criminal negligence." such has no reference to this case or the manner in which it was prosecuted or the manner in which the jury was charged.

An authoritative discussion on lesser included offenses is to be found in 10 U.C.L.A. L. Rev. 872 (1962-63) wherein it is stated that among the four functions of the "included offense doctrine" one is that "* * * it entitles the accused on trial for the greater offense to a jury instruction on lesser included offenses *which are supported by the evidence.*" (Emphasis supplied.) The article elaborates on page 906:

"Often an instruction on a lesser included offense will be justified, *not because* the offense is included, but rather because: (1) it is supported by the evidence; (2) it is of the same approximate gravity and type as the offense charged; and (3) the defendant is likely to be found guilty of the charged offense in the absence of such an instruction. * * *"

The article then goes on to state, on page 908, that:

"Inasmuch as the prosecutor selects the offense with

which he will charge the defendant, and the statutory penal scheme is primarily prosecution-oriented, the defendant should be permitted to obtain instruction upon an uncharged offense supported by the evidence *only* when there is danger that without it he will be convicted without convincing evidence on the charged offense."

A reading of this record indicates undisputed evidence that: 1. Daniels was driving the car and that a collision occurred between his automobile and the truck; 2. that the decedent Carter's death was caused directly and proximately by the accident, in which he was crushed between the truck he was working on and his own truck; 3. that Daniels was operating the automobile in an erratic manner as previously described, and his conduct proximately caused the accident.

Thus with a man dead as a result of a mishap it was highly unlikely that defendant could win an acquittal at the hands of the jury, irrespective of the doubtful evidence concerning his intoxication. It is because of this very fact that the jury should have been given some choice of verdict on defendant's theory of the case — that his fatigue, long hours without sleep and subsequent drowsiness was the explanation for his erratic and grossly negligent driving.

In my view Daniels, even under the majority opinion, is entitled to a new trial so that the issues as they are now being framed under the majority opinion can be clearly defined and carefully placed before the jury advising them that the statute is so narrow that they cannot convict under any circumstances unless there is proof beyond reasonable doubt that the one charged is intoxicated.

MR. JUSTICE FRANTZ dissenting:

In an amended information, Daniels was charged with violating C.R.S. 1963, 40-2-10. It was alleged that "Don-

ald Eugene Daniels, while under the influence of intoxicating liquor, did unlawfully and feloniously cause the death of one Joseph L. Carter by operating and driving a motor vehicle in a reckless, negligent and careless manner . . ."

The sole argument presented by Daniels arises from the refusal of the trial court to submit instructions and forms of verdict to the jury covering the lesser included offenses of (1) involuntary manslaughter, (2) driving under the influence of intoxicating liquor, (3) reckless driving, and (4) careless driving.

C.R.S. 1963, 40-2-10, presents two alternatives concerning the manner of driving by one intoxicated: (1) driving a motor vehicle "in a reckless, negligent or careless manner" or (2) driving "with a wanton or reckless disregard of human life or safety." In the present case the district attorney saw fit to charge Daniels with operating his vehicle in a reckless, negligent and careless manner, which in degree is substantially different from driving with a wanton or reckless disregard of human life or safety. "Reckless" in the company of words in the first alternative is not the recklessness contemplated by the second alternative. The latter comes within C.R.S. 1963, 13-5-31(1), which defines reckless driving as wanton or willful disregard for the safety of persons or property. The information, therefore, excludes the reckless and wanton failure required by *Trujillo v. People,* 133 Colo. 186, 292 P.2d 980, which is part and parcel of involuntary manslaughter.

The perimeter of the charge and of any lesser included offenses is determined by the information lodged against Daniels. Since the recklessness and wantonness required in a manslaughter charge are not included in the information, I concur with the majority opinion that manslaughter is not an included offense.

But I part company with the majority concerning its views on other asserted lesser included offenses. Driv-

ing while under the influence is, in and of itself, a crime in this state. C.R.S. 1963, 13-5-30. Careless driving, in and of itself, is also an offense in this state. C.R.S. 1963, 13-5-32.

In order to prove the guilt of Daniels as laid in the information, it is incumbent on the state to prove (1) that Daniels was under the influence of intoxicating liquor, (2) that he operated the vehicle while so under the influence in a reckless, negligent and careless manner, and (3) that death resulted therefrom. Under every conceivable definition of lesser included offenses, driving while under the influence and careless driving must be considered as elements of the greater offense, to-wit: causing death while under the influence, as defined in 40-2-10.

In *People v. Futamata*, 140 Colo. 233, 343 P.2d 1058, this court laid out the guidelines for determining what are lesser included offenses in this way:

"The approved test is: 'If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater."

Because the majority rely heavily on a Utah decision, written in 1925, it becomes important to give heed to the California criterion for determining whether an offense embraces other offenses, as will hereinafter be made to appear. Time and again the appellate courts of California have stated the simple formula to be applied. One of these cases was *People v. Marshall*, 48 Cal.2d 394, 309 P.2d 456, in which the court declared that "if, in the commission of acts denounced by one statute, the offender must always violate another, the one offense is necessarily included in the other."

Another test sometimes used is as follows:

"A prosecution and conviction or acquittal for any

part of a single offense bars further prosecution for any act comprising the whole or any part of defendant's misconduct pertaining to that identical delinquency." *State v. McLaughlin,* 121 Kan. 693, 249 Pac. 612.

As suggested, the majority relies upon *State v. Empey,* 65 Utah 609, 239 Pac. 25, 44 A.L.R. 558, a case which, I submit, has no relevancy to our problem. In that case the defendant was convicted of a crime, and later tried and convicted of a greater offense. To better understand why *State v. Empey* has no bearing on this case, I call attention to a very recent case from the same state — *State v. Brennan,* 13 Utah 2d 195, 371 P.2d 27. The latter case is directly in point with our problem here, and supports conclusively my view.

In the *Empey* case it should be noted that on page 27 of the Pacific Reporter the court cites a number of California cases, and says that these cases construe California statutes which have been incorporated in the criminal code of Utah, and that "this court, however, is committed to the doctrine announced by the California cases to which reference has been made."

The court continues:

"In State v. Cheeseman, 63 Utah, 138, 223 P. 762, where Mr. Justice Thurman, after referring to the cases in which the doctrine of when an acquittal of one offense is a bar to a prosecution for another, in speaking for this court (page 142 of the Utah Reports, 223 P. 764) says: 'It may be said, however, with perfect safety, that within the doctrine of the authorities cited the acquittal of a person for one offense is no bar to the prosecution of another, unless it appears that some essential element of the second offense was necessarily adjudicated and determined in the offense of which he was acquitted.' "

In the *Brennan* case, Brennnan had been charged with violating their statute, which in part reads as follows:

"(a) It is unlawful and punishable as provided in subdivision (d) of this section for any person * * * un-

der the influence of intoxicating liquor * * * to drive * * * any vehicle within this state.

\* \* \*

"(d) * * * provided that in the event that such defendant shall have inflicted a bodily injury upon another as a proximate result of having operated said vehicle in a reckless or negligent manner * * * he shall be punished by imprisonment in the county jail for not more than one year and, in the discretion of the court, a fine of not more than $1,000."

The court, over the objection of the state, dismissed the charge on the ground that there had been a failure to adequately prove reckless or negligent driving of the defendant. The *state* took the position that there was the lesser included offense, supported by evidence, of driving while under the influence of liquor. In our case, the *defendant* insists there is a lesser included offense.

Here is what the court said in the Brennan case:

"The rule as to when one offense is included in another is that the greater offense includes a lesser one when establishment of the greater would necessarily include proof of all of the elements necessary to prove the lesser. Conversely, it is only when the proof of the lesser offense requires some element not involved in the greater offense that the lesser would not be an included offense. Applying that rule here: it will be seen that subdivision (a) of the statute quoted above prohibits the driving of a motor vehicle under the influence of liquor as a separate offense, with a separate punishment as a misdemeanor as set forth in subdivision (d); and that it is necessarily included in the greater offense of driving while intoxicated *and* injuring another in a reckless or negligent manner, which is punishable as an indictable misdemeanor.

"In view of the fact that the evidence of intoxication recited above obviously would have been sufficient to prove a prima facie case of driving while intoxicated, we are unable to perceive why the trial court did not

submit the case to the jury on that included offense. In refusing the state's request to do so it committed error against the State."

A statute making it an offense to drive while under the influence, and when so driving to do an unlawful act causing bodily injury to another, was treated in the same way by the Court of Appeals in California. There the court held that driving while under the influence (itself a statutory offense) was included in the statute adverted to in *People v. Gossman,* 95 Cal. App.2d 293, 212 P.2d 585.

Another case directly in point, decided in 1964, is that of *State v. Heitter,* (Del.) 203 A.2d 69. It is in accord with the case of *State v. Brennan.*

A combination of two crimes — driving while under the influence and careless driving — resulting in death is the offense with which we are dealing. The crime of driving while under the influence must be proved beyond a reasonable doubt, and the crime of careless driving must be proved to the same degree in order to make the resulting death a completed violation of the statute. Any other view of the statute breaks with the tests by which included offenses are considered part of the greater crime.