## No. 22760.

ALFRED QUINTANA *v.* THE PEOPLE OF THE STATE OF
COLORADO.
(451 P.2d 286)

Decided March 3, 1969.

Donald N. Pacheco, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

. Plaintiff in error, to whom we will refer as defendant, was granted a new trial as a result of our having reversed his previous conviction in *Quintana v. People*, 158 Colo. 189, 405 P.2d 740. He is here again alleging that prejudicial errors tainted his second trial, and that his conviction on two counts of aggravated robbery and conspiracy should again be reversed. We find no merit in Quintana's arguments and affirm the judgment of the trial court.

## I.

The first point in defendant's summary of argument is that he was prejudiced in the eyes of the jury because he was escorted to and from the courtroom by uniformed sheriff's officers wearing side arms, and that the sheriffs also were present in the courtroom during the trial. Three separate motions were filed during the trial requesting the court to remove the sheriffs. The motions were denied.

Defendant relies on *Eaddy v. People*, 115 Colo. 488, 174 P.2d 717, wherein this court held that the presumption of innocence requires the garb of innocence and further that the defendant is entitled to be brought before the court "with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require."

The facts in the *Eaddy* case are quite dissimilar to what is alleged to have occurred in Quintana's trial. Quintana was not brought into the courtroom shackled nor was he in prison garb. It was stated by defendant's counsel in his oral motion before the court, without proof or an offer thereof, that defendant was brought back and forth to the courtroom accompanied by the uniformed guards when jurors were in the hall nearby, presumably where they could see him; and that the jurors might have seen the defendant come into the courtroom during the trial with an armed guard in back and in front of him. The defendant never made a request to the court that it examine the jury to determine whether they observed the incidents or were prejudiced thereby; nor was there a request made that the jury be instructed to disregard the alleged incidents and not to draw any inferences from their observations of the uniformed sheriffs. *See State v. Ollison*, 68 Wash. 2d 65, 411 P.2d 419.

The trial court stated in ruling on one of the motions, "As I have observed our sheriffs though, they stay in the background, they sit in chairs, one along the wall and one along the rail, and they don't interfere in any

way. They don't communicate with defendant during the course of the trial. As far as the jury is concerned, they don't know whether they are sheriff's officers or court officers. It would be rather difficult for them to have to appear in civilian clothes when they have other duties to perform in addition to merely protecting the defendant."

■ As was stated by the Missouri Supreme Court in *State v. Daniels*, 347 S.W.2d 874:

"* * * Nor do we know whether the court's ruling was or was not based on its own knowledge of facts contrary to those thus asserted. But if the record be deemed sufficient to support the inference that the deputy sheriff did, in fact, wear a weapon in the manner claimed, we think such circumstance, standing alone, and in the absence of facts pointing more directly to probable prejudice, is insufficient whereon to predicate reversible error. 'While care should be taken to prevent the creation of an atmosphere prejudicial to [the] accused, courts may take all reasonably necessary precautions for the maintenance of order during the progress of a trial * * * and for the retention of the custody of an accused (citing cases) * * *.' "

■ There was no evidence that the presence of the sheriff's officers exceeded those bounds deemed necessary under such circumstances for the maintenance of order or for the custody of the accused.

## II.

■ The point raised in this assignment of error is that the court erred in permitting to be read to the jury the testimony and cross-examination from the previous trial of a witness who was not available for the second trial. In support of this argument the defendant contends that there was a lack of "due diligence" on the part of the prosecution in its efforts to ascertain the availability of the witness for the second trial. The court in the exercise of its discretion ruled that the facts shown by the prosecution established due diligence. We are persuaded from

what is shown in the record that every reasonable step was taken by the prosecution to trace the witness from Denver to California and that every lead produced tending to establish the whereabouts of the witness "ended in a blind alley." It was not disputed that the witness had left the jurisdiction. The defendant's counsel was also not able to find the witness in Colorado, and accordingly ceased effort to contact him upon learning that he was not in Denver.

There is sufficient evidence of diligence to sustain the court's ruling. *Duran v. People,* 156 Colo. 385, 399 P.2d 412.

### III.

The third assignment of error is directed to a defect in the information to which defendant made objection for the first time prior to the second trial. The information was filed on February 20, 1963, and attached to it was an affidavit signed by the complaining witness, Joe T. Horiuchi. Under the complainant's signature appears the following:

"Subscribed and sworn to before me this 19th day of February 19......

My commission expires July 9, 1965.

Violet D. Robinson<br>Notary Public

(Seal)"

The question presented is whether the absence of the year in the verification signed by the notary makes the information fatally defective. We hold that it does not.

Everything that is required for the official act of a notary as provided in C.R.S. 1963, 96-1-5, appears on the instrument, to wit, the impression of the notarial seal, and the designation in writing signed by the notary "when his commission as such notary expires."

The verification is prima facie evidence of the facts contained therein. There is no major defect in the information itself such as a material misnomer of the

accused or lack of an essential allegation. The defendant was never under a misapprehension of the nature of the charge. He was not surprised or misled. The minor defect noted in the verification to the information was present at the first trial, and the defendant went through that trial and brought the matter to this court without calling it to the attention of anyone for correction. It has been held in Colorado that the absence of a verification on an information is not jurisdictional. It is for the benefit of the defendant and is waived unless timely objection is made thereto. Objection three years later, in 1966, after one full trial and appeal, is not timely. See *Bustamante v. People*, 136 Colo. 362, 317 P.2d 885, for a full discussion concerning minor defects in an affidavit attached to an information.

We conclude there was no prejudicial error such as to warrant a second reversal.

The judgment is affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.