No. 24796

The People of the State of Colorado v.
William Douglas Edward Cardwell
(510 P.2d 317)

Decided May 21, 1973.

422

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, George W. Boyle, II, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, Randolph M. Karsh, Deputy, for defendant-appellant.

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant, William Douglas Edward Cardwell, and one Jerry Stilley were charged by information with (1) Escape in violation of C.R.S. 1963, 40-7-53, and (2) Kidnapping in violation of C.R.S. 1963, 40-2-44. Both were tried and found guilty. The district attorney moved to dismiss the escape count, which the court granted. They were sentenced and brought this appeal. Pending this appeal, Stilley died and, as to him, the issues raised are moot.

Five issues are raised challenging the validity of the conviction. Having reviewed each of them and finding them to be without merit, we affirm.

The victim of the kidnapping was Kenneth Allen, a correctional officer at the Colorado State Penitentiary, Canon City, at which institution the defendant and Stilley were inmates at all times relevant to these facts. On September 30, 1969, Allen was directed to escort the defendant and Stilley to Denver in connection with the promotion of a play being sponsored by an inmate drama group, to which defendant and Stilley belonged. The three men left the institution at 4:00 a.m. and were to return in approximately 22 hours.

With but few deviations from a pre-arranged schedule, the

defendant, Stilley, and Allen went about their assigned tasks until the evening meal. After the evening meal, the three men went to a drug store to get some medication for a purported headache of one of the prisoners. Upon entering the drug store, Stilley and the defendant split up, one going to one part of the store and the other to another section. Apparently, the defendant bought a ruler and other "office supplies," although Allen did not examine the contents of the sacks of his two charges.

Later that evening, while trying to find the home of some alleged benefactor, the party, with Allen driving and Stilley giving directions, wound up on a dead end street. As Allen was turning around, Stilley stated he was sick and wanted to get out. The car was stopped and Stilley was allowed to get out; he shortly thereafter returned to the rear seat of the car and by putting some kind of a cord around Allen's neck forced him to the passenger side. The defendant got into the driver's seat and drove the car to a more secluded area adjacent to a creek.

Cardwell then got out of the car, went around to the passenger side and proceeded to tape Allen's hands and mouth. At this time, Cardwell said, "If you resist, we will stick you with an ice pick." Next Allen was taken about 75 feet from the car where he was placed on the ground, and his hands and feet were taped and tied with neckties. When the defendant and Stilley returned to the car, Allen made an effort to free his hands. This attempt was discovered and Allen was threatened with a beating. Allen was told that he was bound in such a fashion that it would take him eight hours to free himself.

Allen broke his bonds within an hour and notified police who arrested the defendant and Stilley as they were about to depart for Albuquerque, New Mexico on a charter air flight.

I.

■∎ The statute under which the defendant was charged reads:

"A person shall be guilty of kidnapping who willfully:

. . . .

"(2) without lawful authority seizes, confines, imprisons, keeps or detains another against his will, forcibly or otherwise, within the state or to be sent out of the state . . . ." C.R.S. 1963, 40-2-44(2).

The defendant suggests that the kidnapping statute, by using words such as "seize," "confine," "imprison," "keep," and "detain" to define the offense, words which he contends have many different meanings, is so vague that men of common intelligence and understanding are required to guess as to its application. We disagree.

■ The defendant and the People agree that the proper standard to use in testing a criminal statute for vagueness is *Connally v. General Construction Company,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), which enunciated the rule in these words:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application violates the first essential of due process of law."

We follow the *Connally* test in this jurisdiction. *Self v. People,* 167 Colo. 292, 448 P.2d 619 (1968); *People v. Heckard,* 164 Colo. 19, 431 P.2d 1014 (1967); *Memorial Trusts v. Berry,* 144 Colo. 448, 356 P.2d 884 (1960); and *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005 (1960).

■ The statute appears to us to be sufficiently definite to give notice of the proscribed conduct to one who would avoid its penalties, and to guide the judge in its application and defense counsel in defending one charged with its violation. *Boyce Motor Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

The United States Supreme Court, in *Boyce Motor Lines v. United States, supra,* observed that,

". . . But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

Mr. Justice Brennan in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, on the issue of vagueness made this pertinent observation:

". . . This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards': all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . .' "

■ We hold that the kidnapping statute gives sufficiently definite warning of the forbidden conduct so that men of common intelligence can readily apprehend its meaning and application. Kidnapping can be accomplished in many ways; not just by seizing, concealing and holding for ransom. The vagueness argument must fail. The defendant has failed to sustain his burden of proving that the statute is unconstitutionally vague. *Love v. Bell,* 171 Colo. 27, 465 P.2d 118 (1970).

## II.

The defendant assigns four trial court errors which he asserts require us to grant him a new trial. From our review of the record we conclude that there is no merit to these contentions.

## A.

If the evidence in the instant case is analyzed in the context of modern legal concepts and reasonable interpretation of legislative intent, the defendant argues, it is insufficient as a matter of law to sustain the conviction.

■ The defendant urges us to adopt the New York doctrine as expounded in *People v. Lombardi,* 20 N.Y.2d 266, 229 N.E.2d 206 (1967), and *People v. Levy,* 15 N.Y.2d 159, 204 N.E.2d 842 (1965). This doctrine is that the court will limit the application of the kidnapping statute to "kidnapping" in the conventional sense and will not apply it where the kidnapping is merely "incidental" to other crimes, and where the risk of harm to the victim is not measurably increased. A similar result would obtain were we to follow the new California rule adopted in *People v. Daniels,* 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969). We hold, however, that under the circumstances here, the offense of kidnapping was committed.

Evidence of an intent to escape appeared long before Allen was put under actual physical constraint: the deviation from the planned itinerary, the separation of the parties in the drug store, the purchase of the "office supplies" (the tape used to bind the victim), the directing of the victim to a remote dead end street. During all of these maneuvers, covering both time and distance, the victim was apprehensive and realized he was under partial domination of the defendant and Stilley. This negates the argument that the asportation was of only a few feet and the time of confinement so brief that they were merely incidental to the real crime of escape. Most kidnappings are incidental to some other offense. Even the so-called traditional kidnapping is incidental to extortion or murder or, quite often, both. This kidnapping was done in furtherance of the objective of escape.

The means used to effect the escape was sufficiently horrendous that it should constitute an offense separately cognizable from that of escape. By driving the victim into the more secluded area where the two prisoners could have easily carried out the threat of killing him, they substantially increased the risk of harm above that necessarily attendant upon the intended crime of escape.

Defendant's contention that the legislature did not intend "incidental detention" to be part of the crime of kidnapping

is inapplicable to the facts involved here, as is apparent from the summary of facts set out above.

B.

█ The defendant assigns trial court error in the submission of a jury instruction on circumstantial evidence, claiming no such evidence was before the jury. He contends that the People's case was based entirely on direct evidence. We perceive no prejudice in this assignment of error.

C.

The defendant bottoms error on the trial court's denial of defendant's motion to prohibit the sheriff from transporting defendant to and from the courtroom in shackles and by not prohibiting the presence of uniformed police officers in the courtroom.

█ As to the matter of transporting the defendants in shackles, this court has stated on several occasions that for the public safety, and to prevent prisoners from escaping, defendants may be transported to and from a courtroom in shackles if reasonable efforts are made to prevent the defendants from being seen by prospective or actual jurors. *McLean v. People,* 172 Colo. 338, 473 P.2d 715 (1970); *Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968); and *Glass v. United States,* 351 F.2d 678 (10th Cir. 1965). The court's answer to defendant's motion indicates the sheriff was making reasonable efforts to prevent the jurors from seeing the defendant in shackles. The sheriff indicated to the court that he was going to wait until the jurors had left the courtroom before he removed the defendant and Stilley. There was no evidence that the defendant ever appeared in court before the jury in shackles, as in *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062 (1959). Furthermore, there was no evidence that any of the jurors ever saw the defendant in handcuffs, and the defendant never requested permission to question the jurors as to having seen the defendant in shackles, *Quintana v. People,* 168 Colo. 308, 451 P.2d 286 (1969). There is nothing in the record to substantiate the charge, *Pieramico v. People,* 173 Colo. 276, 478 P.2d 304 (1970).

■ Since the record indicates the sheriff was using reasonable precautions to prevent the jurors from seeing the defendant in shackles, the trial court did not err in denying the motion as to their transportation to and from the courtroom.

As to the presence of police officers in the courtroom during the trial, the case is controlled by this court's decision in *Quintana, supra,* and *Lucero v. People,* 171 Colo. 167, 465 P.2d 504 (1970), both of which distinguish *Eaddy v. People,* 115 Colo. 488, 174 P.2d 717 (1946).

The defendant made no request to the court that it examine the jury to determine whether they observed the incidents or were prejudiced thereby; nor was there a request that the jury be instructed to disregard the alleged incidents and not to draw any inferences from their observations of the uniformed officers.

■ The courts may take all reasonably necessary precautions for the maintenance of order during the trial and for the retention of the custody of an accused. *Quintana v. People, supra.* Consequently, there was no error in the proceedings complained of.

### D.

As to his final point of contention, the defendant alleges error in the trial court's refusal to give his tendered instruction on criminal assault. In order for this to be a viable contention, it must appear that *assault* is a lesser included offense of kidnapping.

The test for lesser included offenses was set forth in *People v. Futamata,* 140 Colo. 233, 343 P.2d 1058 (1959). It is:

"If the greater of two offenses includes all of the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater."

This test was recently followed in *Howard v. People,* 173 Colo. 209, 477 P.2d 378 (1970) where we said:

"it should be noted that the character of an offense is determined not by the evidence which may be legally

*admissible* under the charge, but by the evidence which is required to sustain the charge. *Daniels v. People,* 159 Colo. 190, 411 P.2d 316 (1966)."

To determine whether one crime is a lesser included offense of another, we must look at the statutes defining the two crimes to determine what the essential elements of each are.

The crime of kidnapping is defined in C.R.S. 1963, 40-2-44, as follows: "A person shall be guilty of kidnapping who willfully: ... (2) Without lawful authority seizes, confines, imprisons, keeps or detains another against his will forcibly or otherwise, within the state or to be sent out of the state; or ...." The essential elements are (1) willfulness or intent to do the act; (2) the act must be done without lawful' authority; (3) there must be a seizing, confining, imprisoning, keeping, or detaining; and (4) the act must be done against the victim's will, by means of force or otherwise. All the elements must be present or the crime of kidnapping is not committed.

The crime of assault is defined by C.R.S. 1963, 40-2-33, as follows: "An assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another." The essential elements of assault are: (1) an unlawful attempt to commit a violent injury; and (2) the present ability to commit a violent injury. These two elements must be shown to have existed at the same time in order to sustain a charge of assault. *Haas v. People,* 155 Colo. 371, 394 P.2d 845 (1964).

As can be seen by examining the essential elements of the two crimes, the key words in the statute defining kidnapping are "forcibly or otherwise." Does this element of kidnapping necessarily include the two essential elements of assault? Must one assault another in order to seize, confine, imprison, keep, or detain that person against his will?

This court has never spoken directly to this question. In looking to other authorities for an answer, we find that the California courts, in construing the word "forcibly" in their statute, *West. Cal. Penal Code* § 207, have stated that:

"[t]he requisite force or compulsion need not consist of the use of actual physical force or of express threats; the taking is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he fears harm or injury from the accused, and his apprehension is not unreasonable under the circumstances. *People v. Dagampat,* 167 Cal.App.2d 492, 334 P.2d 581, 583 (1959)."

*See also People v. Gomez,* 252 Cal.App.2d 844, 60 Cal.Rptr. 881 (1967), where the court stated that the offense of kidnapping involved some form of compulsion, which "need not consist of the use of actual physical force or express threats." at 890. The New Mexico Supreme Court also has construed the word "force" as used in its statute as not meaning violent or deadly force.

"It could not have been the legislative intention to so limit the statute, for, many kidnappings are accomplished by the use of minimal force, as, for example, where a child is abducted. *State v. Clark,* 80 N.M. 340, 455 P.2d 844, 846 (1969)."

As was said in 1 Am.Jur.2d, *Abduction and Kidnapping* § 13 (1962):

"The use of physical force or violence is not always essential to the commission of the crime of kidnapping. For kidnapping, it is generally sufficient that a threat is used, if it is of sufficient force to put an ordinarily prudent person in fear for his personal safety. Fraud may likewise be sufficient. But force, threat of force, or fraud is usually required, and the holding or restraint may be achieved by mental as well as by physical means. It has been said that the word 'inveigle' in a kidnapping statute, carried the idea of deception for accomplishment of an evil purpose. Some statutory definitions expressly mention 'decoying' as one of the possible manners of perpetrating a kidnapping."

The cited authorities indicate that an assault is not a necessary element of the crime of kidnapping; there does not need to be an unlawful attempt to commit a violent injury, or the present ability to commit a violent injury, in order to commit the crime of kidnapping.

432

Although in a particular situation an assault may be a *factual* element in a kidnapping, it is not a *necessary* element of the crime. *Daniels v. People,* 159 Colo. 190, 411 P.2d 316 (1966); *Schott v. People,* 174 Colo. 15, 482 P.2d 101 (1971). Since the lesser offense is not a necessary element of the greater offense, the trial court ruled correctly in refusing the defendant's tendered instruction on assault.

The judgment is affirmed.

MR. JUSTICE ERICKSON does not participate.